Bigelow *v.* Ayrault.

[MONROE GENERAL TERM, June 4, 1866. *Welles, E. Darwin Smith,* and *Johnson,* Justices.]

———————— • • • ————————

BIGELOW and others *vs.* AYRAULT and others.

Where a person, who is insolvent at the time, transfers his interest in a legacy, for an inadequate consideration, to a party who is aware of his insolvency, the creditors of the assignor may maintain a suit in equity to have their debts satisfied out of the interest or fund beyond the consideration actually paid or agreed to be paid; even though the transaction was not in fact fraudulent, so as to authorize the court to set it aside on that ground.

In such a case the assignor, in the absence of any fraudulent design in making the transfer, may obtain the same relief himself, by showing that it was made under the pressure of his debts, or other importunate needs. And certainly equity should regard with quite as much favor the claims of his creditors; especially in a case where it appears that he intended to defraud them by a cheap transfer of his estate.

THIS action was commenced for the purpose of setting aside a transfer by George Ayrault to Aaron Van Nostrand, of a legacy given him under the last will of Allen Ayrault, deceased. The plaintiffs, Bigelow and Hoagland, alleged in their complaint that they obtained a judgment against George Ayrault, in this court, August 13, 1858, for $410.88, in Allegany county. That execution was issued on this judgment to the sheriff of Allegany county, February

26, 1861, and returned unsatisfied March 15, 1861. That George Ayrault and Aaron Van Nostrand then lived in Allegany county. That proceedings supplementary to execution on this judgment were commenced, and the order therein served on George Ayrault, April 4, 1861. He was examined under the same, and subsequently the plaintiff John Rorbach was, on the 19th of August, 1861, appointed receiver of the property of George Ayrault.

The defendant Luzon Van Nostrand, by his answer, denied each and every allegation contained in the complaint; and for a second and further defense he alleged that on the 25th day of February, 1861, George Ayrault, for a good, sufficient and valuable consideration, in good faith, assigned, sold and set over to Aaron Van Nostrand all his right, title and interest of, in and to the legacy given to him, said George Ayrault, in and by the will of Allen Ayrault, deceased, and that thereupon the said Aaron became in good faith the absolute owner thereof; and that afterwards, and before the commencement of this action, the said Aaron, for a good and valuable consideration, and in good faith, sold, assigned, and set over to said Luzon Van Nostrand all his right, title and interest, of, in and to the said legacy, and that the said defendant, Luzon Van Nostrand, is now in good faith the absolute owner thereof, and that said George Ayrault, since the sale thereof to said Aaron Van Nostrand, has had no interest therein of any kind or nature whatsoever.

The action was tried before Justice J. C. SMITH, at a special term, without a jury, who found the following facts:

"That all the allegations in the complaint respecting the obtaining and docketing judgment in favor of the plaintiffs Bigelow and Hoagland, against the defendant George Ayrault, the issuing execution thereon and its return, the proceedings supplementary to execution, and the appointment of a receiver therein, are true. That Allen Ayrault died in Geneseo, on the fourth day of February, 1861, leaving a will, which was afterwards duly proved and recorded, and by the

provisions of which the said George Ayrault became entitled, as legatee, to one undivided thirty-third part of two undivided third parts of the residuum of the estate of said testator, remaining after the payment of the specific legacies and bequests created in and by said will. The defendants, named in the complaint as executors of said will, are such. That on the 25th day of February, 1861, said George Ayrault transferred all his interest, as such legatee, in the estate of said testator to the defendant Aaron Van Nostrand, in consideration of the sum of one thousand dollars agreed to be paid therefor, and for which said Van Nostrand executed his promissory notes, on time with interest, and delivered them to said George Ayrault, who afterwards transferred them to third persons in payment of certain debts theretofore contracted by him. That on the 27th of August, 1862, said Aaron Van Nostrand transferred his interest in said estate to the defendant Luzon Van Nostrand, in consideration of the sum of one thousand and fifty dollars, of which the sum of seven hundred dollars was paid down, and for the balance said Luzon made his promissory note and delivered it to said Aaron. That said Aaron died in December, 1862, and no administrator of his estate has been appointed. That said note was not transferred by him in his life time, and it is now past due. That at the time of said transfer to Aaron Van Nostrand, said George Ayrault was insolvent, and has continued so ever since, and he executed said transfer with intent to defraud the plaintiffs Bigelow and Hoagland, and others, his creditors. That at the time of the transfer of said interest by George Ayrault to Aaron Van Nostrand, no part of the estate had been distributed. That at the time of the transfer by Aaron to Luzon Van Nostrand, but a small part of the estate had been distributed, and it was not practicable then and had not been previously, to estimate with reasonable certainty the value of said interest bequeathed to George Ayrault, partly because the amount of the estate of the testator was not then definitely ascertained, and principally

because by the terms of the will the extent of said interest could not be known until the death of said George Ayrault, or until the complete distribution of the estate during his life; but at the time of each of said transfers, it was apparent that the value of said interest would probably exceed one thousand dollars, and that it might exceed four thousand four hundred dollars; and these facts respecting the value of said interest were known by the said Aaron and Luzon, respectively, when they took said transfers, and they also then knew that said George Ayrault was insolvent. That the executors now have in their hands, applicable to the payment of said legacy, at least the sum of thirteen hundred dollars,"

The court found also the following conclusions of law: "That as against the plaintiffs, said transfers are valid only as securities to said Aaron, or his representatives, and said Luzon Van Nostrand, for the sums advanced by them respectively, with interest. That the plaintiffs are entitled to a judgment directing that the executors of the said Allen Ayrault, out of the moneys now in their hands, or which shall hereafter come into their hands from said estate, applicable to the payment of the legacy given to said George Ayrault, may first retain their own costs and disbursements in this action to be taxed, and next shall pay, first, the sum of one thousand dollars with interest thereon from 25th February, 1861, as follows, to wit, to the defendant, Luzon Van Nostrand, the sum of seven hundred dollars, with interest thereon from 27th August, 1862, and the balance of said one thousand dollars and interest to the administrator of said Aaron Van Nostrand, deceased, or other person legally entitled to receive the same, by way of reimbursement of the sums advanced by said Aaron and Luzon, respectively; and shall pay, secondly, to the plaintiff, John Rorbach, receiver, the amount of the judgment of the plaintiffs, Bigelow and Hoagland, with interest thereon, and their costs and disbursements in this action to be taxed, and also twelve

dollars, the sum allowed them in said supplementary proceedings by way of costs therein, and also the proper charges and expenses of said receiver in the discharge of his duties."

Judgment was accordingly entered, directing "that the defendants, the executors of Allen Ayrault, deceased, out of the moneys now in their hands, or which shall hereafter come into their hands from the estate of said Allen Ayrault, deceased, applicable to the payment of the legacy given by said last will and testament to George Ayrault, one of said defendants; first, may retain their own costs and disbursements of this action, which are adjusted at the sum of $93.79; that said executors next pay out of said moneys, first, the sum of one thousand dollars with interest thereon, from the 25th day of February, 1861, as follows, to wit: To the defendant, Luzon Van Nostrand, the sum of seven hundred dollars with interest thereon, from the 27th day of August, 1862, and the balance of said one thousand dollars and interest, to the administrator of said Aaron Van Nostrand, deceased, or other person legally entitled to receive the same, by way of reimbursement of the sums advanced by said Aaron and Luzon, sespectively; and the said executors pay, secondly, to the plaintiff John Rorbach, receiver of the property of said George Ayrault, the amount of the judgment of the plaintiffs William A. Bigelow and Hudson Hoagland against said George Ayrault, with interest thereon, (which said judgment is for the sum of $410.88, and interest from August 13, 1858,) with their costs and disbursements of this action, which are adjusted and taxed at $107.37, and also the sum of twelve dollars allowed them in said supplementary proceedings, by way of costs therein, and also the proper charges and expenses of said receiver in the discharge of his duties." The defendants appealed from this judgment to the general term.

*Scott Lord,* for the appellants.

*Ward, Abbott & Wilkinson,* for the respondents.

Bigelow *v.* Ayrault.

*By the Court,* JOHNSON, J. The judge, before whom this action was tried, found, as a matter of fact, that the sale and transfer in question was made by the defendant Ayrault, with intent to defraud the plaintiffs Bigelow and Hoagland, but he does not find that the purchaser from him, Aaron Van Nostrand, had any such intent in making his purchase. All that is found on that subject, is that Ayrault was insolvent, and that his insolvency was well known to said Aaron Van Nostrand, at the time of making the purchase, and also that his insolvency was well known to the defendant Luzon Van Nostrand, at the time he purchased from Aaron.

On the subject of the adequacy of the consideration agreed upon and paid, or promised to be paid, the judge finds that the value of the interest of Ayrault, in the estate of his deceased uncle, which was the subject of the sale, could not be then estimated with reasonable certainty, as only a small portion of the fund, in which he was interested, had been distributed, and the extent of the testator's estate was not fully known, and the extent of George's interest could not be determined until his death. But he also finds that at the time of each of said transfers, it was apparent that the value of said interest would probably exceed $1000, and that it might exceed $4400. It is now certain that his interest did then exceed the price agreed to be paid, to an extent considerably beyond the amount of the plaintiffs' demand against George Ayrault. But the purchase was not made by the purchaser with any intent to defraud creditors, and is perfectly valid as between the parties to the transaction, at any rate, so long as the defendant Ayrault makes no complaint and does not seek to set it aside. He does not pretend, nor is there any thing in the finding, or in the evidence, to show that any advantage was taken of his situation, or his necessities, to obtain this transfer of his interest below its real or its supposed value at the time. And as it is found as a fact, that George sold his interest to defraud his cred-

itors, it is manifest he never could reclaim it by any legal proceeding whatever.

The question then arises whether creditors of George Ayrault can come in and have their debts satisfied out of the interest or fund beyond the consideration actually paid, or agreed to be paid.

If a proper case is made, upon the facts found, there is no doubt that such an action may be maintained by the creditors of the person making the transfer, even though the transaction was not, in fact, fraudulent, so as to authorize the court to set it aside on that ground. The case of *Boyd* v. *Dunlap*, (1 *John. Ch.* 478,) is full authority on this point. In that case the court held that the deed assailed was not, in fact, fraudulent, but that it was obtained under suspicious, or inequitable circumstances, and was not even constructively fraudulent, unless as to the value of the property beyond the consideration paid. Yet the court decreed that, under the circumstances, the deed, as respected the creditors of the grantor, should stand as a mortgage for the amount paid, and the creditors be let in for the balance. Chancellor Kent, in that case, remarks : "Nothing can be more equitable than this mode of dealing with these conveyances of such indecisive and dubious aspect, that they can not either be entirely suppressed, or entirely supported, with satisfaction and safety." The same principle was adopted and acted upon at a very early day, in England, in the case of *Herne* v. *Meers*, (1 *Vern.* 465,) which case is also stated in 2 *Bro. C. C.* 177, *note*. The principle is analagous to that which prevails in favor of creditors where the conveyance, by the debtor, is voluntary and constructively fraudulent. The learned judge adopted this principle at special term, and applied it to the facts of this case. Upon well established principles of equity, the defendant Ayrault, but for his fraudulent design in making his transfer, might have obtained the same relief himself, by showing that it was made under the pressure of his debts, or other importunate needs. (*Story's Eq. Jur.*

Bigelow *v.* Ayrault.

§§ 336, 337.)    Certainly, equity should regard, with quite as much favor, the claims of his creditors, especially when it appears that he intended to defraud them by a cheap trans- fer of his estate.

It is claimed, on the part of the defendants, that neither the facts found, nor the evidence in the case, warrant the application of the equitable rule to the case in hand.    But I am of the opinion that the finding and the evidence war- rant the application of the rule to the defendants.    The insol- vency of Ayrault was ·fully known to both the Van Nos- trands, at the time of their respective purchases, as were also all the facts rendering it reasonably certain that the interest was very much larger than the amount agreed upon as the consideration of the purchase.  · They certainly, under the circumstances, owed some duty to the creditors of their vendor, not to take all their debtor had, for a compensa- tion clearly and obviously inadequate, leaving nothing out of which their claims ·could be satisfied.    No injustice is done to the defendant who made the last purchase.    He is fully protected to the amount of his obligation, and his investment ; and the creditors get only what in equity and good conscience they ought to ,have, and which the defend- ant ought not to retain from them.    The just, fair and ben- eficient result, thus worked out by the application of the equitable doctrine in this case, would seem fully to justify the commendation of Judge Story, of the principles of equity jurisprudence, where he says, that "the beautiful character or pervading excellence" of it, "is that it varies. its adjustments and proportions so as to meet the very form and pressure of each particular case, in all its complex habi- tudes."

I am of the opinion that the judgment is right, and should be affirmed, with costs.

[Monroe General Term, June 4, 1866,    *Welles, E. Darwin Smith* and *John- son,* Justices.]