JAMES BALDWIN, Appellant, *v.* ISAAC JUNE and LUCRETIA C. JUNE, Respondents.

*Conveyance in fraud of creditors — retention of the subject-matter thereof as security to the grantee for the consideration paid by him.*

When a conveyance made by a judgment debtor is set aside as in fraud of creditors, in an action in the nature of a creditors' bill, it should be retained as security to the grantee (although said grantee is affected with knowledge of the fraudulent intent with which it was executed), for so much of the consideration therefor as is represented by land conveyed to the grantor in exchange therefor, which by reason of such conveyance to the judgment debtor is made subject to, and the proceeds of which are applicable in satisfaction of, plaintiff's judgment (DWIGHT, P. J., dissenting).

Such security, however, is not to be extended to an antecedent indebtedness of the grantor to the grantee, included in the consideration for the conveyance.

When the grantee in such a case has had the use and profits of the premises covered by the conveyance, he is not entitled to interest on the amount of the consideration for which the conveyance is retained as security.

APPEAL by the plaintiff, James Baldwin, from a judgment of the Supreme Court, entered in the office of the clerk of Steuben county on the 6th day of June, 1892, upon a decision of the court, rendered at the Steuben Special Term.

The plaintiff as a judgment creditor of Isaac June, brought this action to set aside as fraudulent, a deed from the defendant, Isaac June to the defendant, Lucretia C. June, his wife, dated December 19, 1887, conveying a house and lot in the village of Addison, Steuben county, known as the Tuscarora street house. On the same day the defendant Lucretia, in consideration therefor, conveyed to the defendant Isaac a house and lot known as the Hollis house. In making the trade they valued the Tuscarora street lot at $3,000 and the Hollis lot at $2,000. The balance was made up by canceling an indebtedness for borrowed money, etc., which Isaac was owing to Lucretia.

The trial court found as facts that the value of the Tuscarora street place was $3,500, and of the Hollis place but $1,500; that the consideration paid by the defendant Lucretia for the Tuscarora street place was inadquate and unfair, and that defendant Isaac " consented to receive said consideration for the purpose of defraud-

ing his creditors out of the amount in which the value of the Tuscarora street house exceeded the consideration which was paid therefor," and that Lucretia was aware of such intent. Judgment was awarded setting aside the conveyance of the Tuscarora street house, but retaining it as a security to the defendant Lucretia for the value of the Hollis lot and for the money owing her by her husband.

*D. M. Darrin,* for the appellant.

*A. S. Kendall,* for the respondents.

HAIGHT, J.:

This appeal comes here on exceptions taken to the conclusions of law. The evidence is not returned, and we must, therefore, assume that it fully sustains the findings of fact. The appellant, by bringing up the record without the evidence, accepts the findings of fact as correct, but he contends that under the facts as found the conveyance to Lucretia should have been absolutely set aside and not retained as a security for any sum whatever.

It is true, as we have seen, that the court has found that the defendant Lucretia was aware of the fraudulent intent of her husband in making the conveyance. This makes her a party to the fraud, and she must submit to such a judgment as the plaintiff is entitled to. The plaintiff, as a judgment creditor of the defendant Isaac, had a right to have the value of the Tuscarora street house applied upon his judgment. In awarding judgment, it was the duty of the court to see that this is fully done, and the plaintiff protected to the same extent that he would have been had the conveyance not been made.

The trial court has found as a fact, as we have seen, that the defendant Isaac made the conveyance of the Tuscarora street house, and received a consideration therefor, "for the purpose of defrauding his creditors out of the amount which the value of the Tuscarora street house exceeded the consideration which was paid therefor." Under this finding the plaintiff was defrauded only to the extent of the difference between the value of the two places. It must be assumed that the evidence supports this finding. To sustain it, it must have appeared that the plaintiff's judgment had become a lien

upon the Hollis house and lot, and that it had been, or he was entitled to have it sold and the value thereof applied upon his judgment, otherwise he would have been prejudiced by the fraudulent conveyance to the extent of the value of the Tuscarora street place, instead of the difference in the value of the two places. Under this finding he is fully protected by a judgment which preserves the deed of the defendant Lucretia as a security for the value of the Hollis lot, for on a sale of that lot he would obtain the value thereof to apply upon his judgment, and by a sale of the Tuscarora street house the amount thereof, less the value of the Hollis lot, to also apply upon his judgment, thus preserving all of the rights which he would have had had not either conveyance been made. (*Hamilton National Bank* v. *Halsted*, 134 N. Y. 520.)

I am aware that it has frequently been held that payments made by a fraudulent vendee upon the purchase of property, cannot be recovered back or be allowed to him in a judgment setting aside a conveyance which was fraudulent; that he, being a guilty participant in the fraud, was entitled to no relief from the court. But these decisions are founded upon the theory that the rights of the creditors would be impaired by the allowance of such payments.

In the case of the *Hamilton National Bank* v. *Halsted* (*supra*), PARKER, J., in delivering the opinion of the court, says : " If A. convey to B. his farm, worth $5,000, with intent to defraud his creditors, B. paying him one thousand dollars at the time of the delivery of the deed, the court, in the decree setting aside the conveyance, will refuse to grant him relief, not as a proper punishment for the offense, but because the creditors have an equity equal to the value of the property granted, which should be fully protected against him who fraudulently sought to despoil it. But for the conveyance the entire property would have been applicable to the payment of the creditors. By the fraud it was put beyond the reach of an execution. Because of it a court of equity declares the deed void. And to the request of B. that he be allowed the one thousand dollars paid to his fraudulent grantor, a court of equity refuses to listen, because the equity of the creditors embraces the whole of the property, including necessarily the interest represented by the one thousand dollars paid to A., and it cannot be cut down or interfered with by any payment constituting a part of the fraud-

ulent transaction. But for the misconduct of B. the creditors presumably could have reached the entire interest; therefore, the result of it must be borne by him and not by the innocent party."

The refusal to reimburse for moneys paid in such a case is not for the purpose of punishing a party because of his wrongdoing, but is for the purpose of preserving the rights of the creditors to the extent that they would have been, had the conveyance not been made.

In the case of *Loos* v. *Wilkinson* (113 N. Y. 485), the action was to set aside a conveyance of real estate made by a judgment debtor in fraud of the rights of creditors. In that case the grantee was a guilty participant in the fraud and it was so adjudged, yet it was held he should be protected for payments made by him to an amount exceeding $20,000, for interest, taxes, repairs, fees of agents, etc. In that case the grantee had been ordered to account for rents received by him.

EARL, J., in delivering the opinion of the court, says: " And what does such an accounting mean? Does it mean that he shall pay for more rent than he has received or could have received, for more profits than he has made or could have made? Shall he account to the creditors for more rents than they could have received if they had had possession of the real estate? If the grant be of a waste piece of land which the grantee has improved so as to make rent possible, shall he account for gross rents without any allowance for his improvements? If the fraudulent conveyance be of a vessel, unseaworthy, and the vendee makes her, by repairs, seaworthy, and then charters her, shall he be required to account for the gross charter money? Or, in the cases above cited, where the fraudulent vendee of slaves was compelled to account for their hire, would an allowance for their maintenance while they were working for hire have been denied? To answer these queries in the affirmative would, even in a court of equity, be a wide departure from the rule of compensation. It would be spoliation, not justice or equity. A court of equity does not sit for punishment of criminals. If a fraudulent grantee has violated the criminal law, he may be prosecuted and punished in the criminal courts. While such a grantee will not be allowed for permanent improvements made upon the granted property to suit his fancy or simply to promote his supposed interests,

when the creditors of the grantor come into a court of equity seeking to compel him to account for rents and profits, the accounting must be upon equitable principles, and when he has been compelled to surrender the property conveyed to him, and to account for all the profits he has made, or could have made, or ought to have made therefrom, the ends of justice have been completely and exactly attained."

It is said that the defendant Lucretia does not come into court with clean hands, that she knew of the fraudulent intent of her husband. She does not come into court, she is brought in as a defendant, and the plaintiff is asking a judgment against her. The question is, what judgment is he entitled to ? As we have shown, he is entitled to be made good for all that he lost by the fraudulent conveyance, fully that and nothing more. It is not his privilege, or that of this court, to punish her, or enforce forfeitures against her, only in so far as to preserve the rights of the plaintiff as they existed prior to the conveyance in question. The lien of the plaintiff's judgments immediately attached to the lands conveyed by her to her husband. It was not a payment to him in money that he could pocket or secrete, so as to keep it from his creditors, but was a payment in real property which the plaintiff could sell and apply the proceeds upon his judgments.

The provision in the judgment in reference to the money owing her by her husband stands upon a different footing; it was an antecedent debt. Whilst I do not question the right of a diligent creditor to secure the amount of his claim by judgment, deed or mortgage, he must, however, not be guilty of wrongdoing in procuring the same. If he procures the conveyance of the property for his antecedent indebtedness he must allow fair value therefor, and not unnecessarily prejudice the rights of other creditors. He cannot join with the grantor in a scheme to defraud them and still be protected to the amount of his indebtedness. (*Stevens* v. *Brennan,* 79 N. Y. 254.)

In this particular I think the judgment is wrong. The defendant Lucretia should be permitted to hold the deed upon the Tuscarora street house as a security for the sum of $1,500, the value of her Hollis house and lot, and not for the amount of the antecedent indebtedness owing from her husband to her.

The defendant Lucretia has the possession of the Tuscarora street house until the same is sold, and, therefore, has the benefit of the rents, issues and profits thereof. She should not, therefore, have interest on the $1,500.

The judgment should be modified accordingly, and as modified affirmed, without costs of this appeal to either party.

Lewis and Macomber, JJ., concurred.

Dwight, P. J. (dissenting):

The action was in the nature of a creditor's bill, to set aside a deed of a house and lot in the village of Addison in Steuben county, made by the defendant Isaac to the defendant Lucretia, his wife, as being in fraud of creditors. The appeal is on the judgment record alone, the appellant relying for the facts of the case upon the findings of fact made by the court, and his contention being that those findings are not only inconsistent with the conclusions of law and the directions for judgment, but that they entitle the plaintiff to the judgment asked for in this complaint.

After the formal findings of indebtedness and insolvency of the defendant Isaac June, the recovery of several judgments against him by the plaintiff, the return of executions thereon, unsatisfied, and the relationship of the defendants, the court finds that the transfer assailed was made in the exchange of property between the judgment debtor and his wife; that the house and lot known as the Tuscarora street house, conveyed by the former to the latter, was of the value of about $3,500, and the property conveyed by the wife to the husband, known as the Hollis house, was of the value of about $1,500; whereas the exchange was made at a valuation — agreed upon between the parties — of the Tuscarora street property at $3,000, and the Hollis property at $2,000, the difference between those valuations being made up to the husband by crediting to him an alleged indebtedness from him to his wife, of a like amount, for money loaned, goods sold and money had and received. The court found that the amount of such indebtedness did not precisely appear, and the reference was ordered to ascertain the same.

But the court also found as facts, in terms, as follows:

"That the said transfer was made by said Isaac June to secure

for himself and his family the use and occupation of the Tuscarora street house and lot, and to prevent his creditors from taking the same to apply upon his debts, and the same was received by Lucretia June for the purpose of securing the said Tuscarora street house to her as a residence, and obtaining payment of the moneys due from Isaac June to her.

" That the consideration paid by the said Lucretia June for the Tuscarora street house and lot was inadequate and unfair, and that the said Isaac June consented to receive said consideration for the purpose of defrauding his creditors out of the amount which the value of the Tuscarora street house exceeded the consideration which was paid therefor by said Lucretia June, and that the said Lucretia June was aware of said intent."

And, therefore, the court found as conclusions of law, that the plaintiff was entitled to judgment setting aside the conveyance of the Tuscarora street house and lot by the defendant Isaac to the defendant Lucretia, " so far as the same is an obstruction to the levying of executions to be issued upon his said judgments ; " but that the defendant Lucretia was entitled to hold that conveyance as security for the actual value of the Hollis house and lot, and the amount of the indebtedness actually due from the defendant Isaac to her, at the date of the conveyances, and judgment was directed to be entered giving leave to the plaintiff to sell the Tuscarora street house and lot on his judgments against the defendant Isaac, with the same force and effect as if the conveyance to Lucretia had not been made, but providing that such sale should be subject to the lien of Lucretia, as the same should be fixed after the coming in of the report of the referee.

An interlocutory judgment was entered accordingly, a hearing was had before the referee, and on the coming in of his report, the amount for which the defendant Lucretia should hold the conveyance to her as security, was fixed by the court at the sum of $2,111.04, with interest from the date of the conveyance, and a final judgment was directed and entered accordingly. It is from that judgment that this appeal is taken, with notice that with it the interlocutory judgment would be brought up for review.

Upon the case thus made, by the findings of the learned court at Special Term, I can have no doubt that the contention of the appel-

lant is fully sustained to the effect that the judgment is erroneous in so far as it adjudges the defendant Lucretia entitled to hold the conveyance to her as security, and gives her a lien upon the property conveyed for the amount of the consideration rendered by her therefor. That conclusion does violence to the elementary principle that every contract, transfer or transaction which is vitiated by fraud, is vitiated altogether; that the leaven of fraud leavens the whole lump. Here is the unequivocal finding that the conveyance was made with the *intent* on the part of the grantor to defraud his creditors, and that the grantee was aware of such intent. This takes the case out of the saving clause of the Statute of Fraudulent Conveyances, which provides that " the provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser *had previous notice* of the fraudulent intent of his immediate grantor," etc. (2 R. S. p. 137, § 5; Birdseye, p. 1237, § 23.) The first section of the title pronounces its absolute condemnation upon every conveyance " made with the intent to * * * defraud creditors," without any mention of the intent with which such conveyance is received or of the consideration paid therefor; and section 5 (*supra*) saves from such condemnation only those conveyances which are made for a valuable consideration and to purchasers who are without notice of the fraudulent intent. So that the statute itself makes a perfect case against the conveyance in question. And such is the doctrine of all the authorities. (*Starin* v. *Kelly*, 88 N. Y. 421; *Dewey* v. *Moyer*, 72 id. 70; *Billings* v. *Russell*, 101 id. 226; *Baldwin* v. *Short*, 125 id. 553; *Van Wyck* v. *Baker*, 16 Hun, 168; approved in *Davis* v. *Leopold*, 87 N. Y. 620; *Baldwin* v. *Short*, 54 Hun, 473; *Babcock* v. *Jones*, 42 N. Y. St. Repr. 318.)

The only contention made by the respondents against the application of the statute to this case, is an attempt to limit its operation to cases in which the grantee was not merely cognizant of, but an active participant in the fraud. It is clear that the limitation cannot be upheld. It has no warrant in the statute itself, nor in any authoritative decision. The *dictum* of the Commission of Appeals in *Dudley* v. *Danforth* (61 N. Y. 626), which is apparently favorable to such contention, was altogether *obiter*, since the referee in that

case found, expressly, that both purchase and sale were made in good faith; while in *Inglehart* v. *Thousand Island Hotel Co.* (109 N. Y. 462), the referee not only did not find, but refused, on request, to find, fraud either in fact or in law. The case of *Boyd* v. *Dunlap* (1 Johns. Ch. 478), which affords an early precedent for the relief granted by the judgment appealed from, was one in which the Chancellor held the conveyance assailed not fraudulent, either actually or constructively, but only given under suspicious and inequitable circumstances. (See *Bigelow* v. *Ayrault*, 46 Barb. 143.)

But it is quite unnecessary to discuss the question here, whether the fact of knowledge, by the grantee, of the fraud intended by the grantor, is sufficient to avoid the conveyance *in toto*, without a finding of active participation in the fraud, because such participation is clearly made out by the findings in this case. The fraud, as found, consisted chiefly of a fictitious valuation of the two properties for the purposes of the exchange; and in this false valuation the court finds that the defendant Lucretia participated, with knowledge that the purpose of it was to defraud the creditors of her husband out of the amount by which the relative value of the property conveyed by her was thereby enhanced.

Moreover, she was the beneficiary and the sole direct beneficiary of the fraud. She was to have the benefit of every dollar fraudulently withheld from the creditors of her husband. The Tuscarora street property was to come into her hands for a consideration of $1,000 less than its true value as known to her, and — as she knew — for the purpose of fraudulently defeating the remedy of her husband's creditors by that amount. Clearly, when she became a party to the fictitious valuation of the properties transferred, and a party to the exchange based upon the fictitious valuations, with knowledge of the fraudulent purpose of both, she became a party to the fraud, and amenable to its consequences.

In my opinion, the judgment should be modified by striking out the provision for security and a lien, in favor of the defendant Lucretia, upon the property conveyed to her, and inserting a provision for the application of the entire proceeds of the sale of the Tuscarora street property, or so much thereof as may be necessary to the payment and satisfaction of the executions to be issued on the

plaintiff's judgments. Also, by striking out the provision for costs in favor of the defendant Lucretia, and substituting therefor a provision for costs in favor of the plaintiff, against both defendants.

Judgment appealed from modified as indicated in opinion of HAIGHT, J., and as modified affirmed, without costs of this appeal to either party.