Argued 2 December, decided 28 December, 1903.

### WALKER v. HAROLD.

[74 Pac. 705.]

SUFFICIENCY OF PLEADING IN THE ABSENCE OF A DEMURRER.

1. Pleadings unobjected to until after trial will be more liberally construed than when tested by demurrer before the hearing;—thus, an answer in a creditor's suit to set aside certain conveyances as fraudulent, alleging in general terms that the grantee assumed and paid certain mortgage debts that were liens on the land will be sufficient after decree, since the details of the defense may fairly be implied from what is stated.

EVIDENCE CONSIDERED.

2. The evidence shows that the grantor of the property in question was indebted to his mother-in-law at the time of the transfer to the extent of only $400, and not $1,200, as he claims.

DECLARATIONS MADE AFTER A CONVEYANCE AS EVIDENCE OF FRAUD.

3. Where the evidence shows a dishonest combination between the parties to a conveyance, the declarations and admissions of the grantor made after the execution of the deed are admissible against the grantee to prove a fraudulent intent.

FRAUDULENT CONVEYANCE TO WIFE—BURDEN OF PROOF.

4. In a suit by a creditor to set aside a conveyance by an insolvent to his wife, the wife has the burden of proving that she is an innocent purchaser for a valuable consideration.

FRAUDULENT CONVEYANCE—SHOWING CONSIDERATION.

5. Where a conveyance of land by an insolvent to a relative or member of his family is attacked by creditors, the grantee should be required to show clearly the amount and details of the consideration, and under that rule the grantee in this case has proved a consideration of only four hundred dollars.

LIABILITIES ENFORCEABLE AGAINST HOMESTEADS.

6. B. & C. Comp. § 221, providing that the homestead of any family shall be exempt from judicial sale for the satisfaction of any liability subsequently contracted prohibits a homestead exemption for a liability created prior to the passage of such act.

From Linn : REUBEN P. BOISE, Judge.

This is a suit by T. F. Walker against G. F. Harold and wife to set aside a deed. The facts are that on March 15, 1889, the defendant G. F. Harold was the owner of 240 acres of land in Linn County, at which time he gave his promissory note to W. P. Kaiser for $200, payable in five months, with interest. Thereafter he incumbered the premises by executing mortgages thereon to Henry Keene, Ellen Caldwell, and Parmelia Howard for $600, $800, and $1,200, respectively, and on January 5, 1892, conveyed the land to his wife, the defendant Sarah Harold. Only a part of the note having been paid, Kaiser commenced an action thereon in the circuit court for Marion County, and on October 8, 1894, secured a judgment against Harold for $200, with interest from July 12, 1891, at 8 per cent per annum until paid, $25 attorney's fees, and $14.50 costs and disbursements. The judgment was assigned to plaintiff, and, an execution having been issued thereon and returned *nulla bona*, this suit was instituted, the complaint stating that the deed given to Mrs. Harold was executed without consideration, and with intent to hinder, delay, and defraud her husband's creditors; that it was accepted by her with knowledge of such intent; and that, upon its execution, Harold became, ever since has been, and now is, insolvent. Mrs. Harold alone answering, denied the

material allegations of the complaint, and averred that when she secured the deed the land was incumbered, as hereinbefore stated, and that, in addition to the mortgage debts, her husband owed Parmelia Howard $400, which several sums she assumed and agreed to pay ; that, in pursuance thereof, she discharged the mortgages given to Keene and to Mrs. Howard, and also paid the latter the sum so due her, and the interest on the Caldwell mortgage, which sums she advanced in good faith, paying a valuable consideration for the land, and receiving the deed therefor without notice or knowledge of any fraudulent intent on the part of her husband. The allegations of new matter in the answer were denied in the reply, and, a trial being had, it resulted in a decree dismissing the suit, and plaintiff appeals.                    REVERSED.

For appellant there was a brief and an oral argument by *Mr. Harry J. Bigger.*

For respondents there was a brief over the name of *Weatherford & Wyatt*, with an oral argument by *Mr. J. R. Wyatt.*

MR. CHIEF JUSTICE MOORE, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. It is contended by plaintiff's counsel that the answer not having alleged that the mortgages referred to were executed to evidence *bona fide* debts or were duly recorded, or averred when or how she paid the sums so claimed, or stated that such payments were made from her separate estate without notice or knowledge of any fraudulent intent on the part of her husband, her pleading fails to allege facts sufficient to constitute a defense, and hence the court erred in dismissing the suit. No demurrer was interposed to the answer, in the absence of which its averments should be liberally construed, with a view to substantial justice between the parties: B. & C. Comp. § 85; *Fowler* v. *Phœ-*

*nix Ins. Co.* 35 Or. 559 (57 Pac. 421); *Cederson* v. *Oregon Nav. Co.* 38 Or. 343 (62 Pac. 637, 63 Pac. 763); *West* v. *Eley,* 39 Or. 461 (65 Pac. 798). The answer states facts from which the defense relied upon might reasonably be implied, and, its sufficiency not having been formally challenged, every intendment in its favor will be invoked, and the evidence introduced will be examined to determine whether or not it sustains the theory adopted by the parties and pursued by the trial court. No testimony was offered by either party to establish or disprove the validity of the Keene and Caldwell mortgages of $600 and $800, respectively, and it will be assumed that they were given to evidence just debts, and to secure *bona fide* loans.

2. The conclusion thus reached leaves to be considered the amount and validity of the debt claimed to be due Mrs. Howard; the value of the property January 5, 1892; and whether or not Mrs. Harold was an innocent purchaser thereof. The plaintiff, having offered evidence tending to support the allegations of the complaint, rested, whereupon Mrs. Harold, appearing as a witness in her own behalf, testified that she inherited from her father $400, and received from her mother, Parmelia Howard, $1,200; that her mother loaned her husband $1,600, of which $1,200 was secured by mortgage, in payment of which it was stipulated that the premises in question should be conveyed to the witness in consideration of her agreement to support her mother, and that in pursuance thereof the deed was executed, and that she had faithfully taken care of and provided for her mother during her life; that $200 of the money received from her father's estate was borrowed by her husband from her mother about October 29, 1887, and used in purchasing a part of the land, and the remaining $200 was secured from her mother about four years thereafter, and used in paying one of their employés; that she was not present when her husband borrowed from her

mother any of the money evidenced by the mortgage, but
he secured at different times various sums, which he
brought home and expended in improving the farm; and
that, when the deed was executed to her, she did not know
her husband was indebted to Kaiser, or to any other per-
son except the mortgagees. Mrs. Ellen Caldwell, as de-
fendants' witness, testified that about 1887 her husband,
being indebted to Mrs. Howard on a note for $511, was re-
quested by her to pay a part thereof, so she could aid her
daughter in buying a farm, and that he paid her the sum
of $200, and that, her husband having died in 1891, she
paid Mrs. Howard the remainder due on the note which
the latter claimed to have given to Mrs. Harold. The de-
fendant having called as her witnesses J. T. Follis and
James Shelton, farmers living near her land, the former
testified that in 1892 the value thereof was from $8 to $12,
and the latter, from $8 to $10, per acre, and thereupon she
rested.

The plaintiff was then permitted, over objection and ex-
ception, to introduce in evidence a certified copy of Har-
old's petition praying for the appointment of R. G. Keene
as· administrator of the estate of Parmelia Howard, de-
ceased, filed in the county court of Marion County, and
stating that his mother-in-law died intestate in that county
January 23, 1893, and leaving an estate therein; a certi-
fied copy of the order of that court appointing Keene, and
also a certified copy of another petition filed by Harold in
the matter of that estate, averring that on September 30,
1891, he gave to the deceased his promissory note for
$1,200, payable on or before five years, with interest at
8 per cent; a copy thereof being set out, upon which the
following indorsement purports to have been made : "In-
terest paid to date, September 30th, 1892, and eight hun-
dred dollars, $800, within note." It is also stated in the

petition that this note was secured by a mortgage on the land in question, and that about January, 1892, Mrs. Howard entered into a contract with the petitioner whereby it was stipulated that upon his furnishing, during her life, bran and feed for her cows, and conveying the mortgaged premises to his wife, the mortgage should be canceled and the note surrendered ; that the actual consideration for the note was only $400, and the decedent on September 30, 1892, entered a credit thereon of $800, leaving due only $400 ; that, in pursuance of such agreement, he, on January 5, 1892, executed the deed to his wife, and also during the lifetime of his mother-in-law furnished bran and feed for her cows, but she failed and neglected to satisfy the mortgage or to deliver the note to him. The prayer of the petition is that a citation be issued to the administrator, requiring him to appear and show why the mortgage should not be canceled and the note surrendered. Harold subscribed the petition, and took an oath before a notary public for Oregon, which is indorsed thereon, to the effect that the statements so made were true. Based upon the petition, an order was issued September 18, 1893, requiring Keene to satisfy the mortgage and to deliver the note to Harold. Mrs. Harold, being recalled in her own behalf, testified that she did not know that her husband ever petitioned to be relieved from the mortgage ; and her husband, appearing as her witness, referring to his petition, testified that an attorney, then associated with plaintiff's counsel herein, prepared some papers for him in the settlement of Mrs. Howard's estate ; that they were never read to him; that he did not know what he signed ; that he did not suppose the lawyers employed by him were trying to get him into trouble ; that he received from Mrs. Howard $1,200, besides other money not secured ; and that he did not pay her $800, nor did he know that she gave him credit therefor.

The foregoing comprises the substance of the testimony given at the trial, and, from an examination thereof, it may safely be said that, if Harold's verification of the petition praying for the cancellation of the mortgage is worthy of any belief, it is evident therefrom that he owed Mrs. Howard only $400, and that the mortgage was adopted by him as a means to make it appear to his creditors that the premises conveyed to his wife were incumbered to such an extent as to deter them from instituting suits to set aside his deed. His denial at the trial of any knowledge of the contents of the petition is, in view of his prior verification thereof, unworthy of credence, for it is altogether improbable that the attorneys employed by him to secure the cancellation could have devised the scheme, and successfully maintained it in the county court, securing the necessary order, without his furnishing them a statement which they incorporated in the petition. That he intended to prevent his creditors from collecting their debts is evident, and, from the intimate relation existing between husband and wife, it is scarcely to be supposed that his intention was not known to her: *Jolly* v. *Kyle*, 27 Or. 95 (39 Pac. 999).

3. Though his petition to cancel the mortgage was made after he executed the deed to his wife, it was properly received in evidence, under an exception to the general rule that, where the testimony shows a prior dishonest combination between the parties to a conveyance, the declarations and admissions of the vendor, made after the execution of the deed, are admissible against the vendee to prove a fraudulent intent: B. & C. Comp. § 696; *Krewson* v. *Purdom*, 11 Or. 266 (3 Pac. 822); *Horton* v. *Smith*, 8 Ala. 93 (42 Am. Dec. 628).

4. In a suit by a creditor to set aside a deed executed by an insolvent debtor to his relative, the burden of proof is imposed upon the grantee to show that he is an innocent

purchaser for a valuable consideration, and, when the purchase price consists of an antecedent debt, money paid, or property exchanged, it is also incumbent upon him definitely to point out the various items constituting the alleged consideration, where the conveyance and the circumstances under which it was made bear the semblance of an attempt to cover up the property of the debtor: *Marks* v. *Crow*, 14 Or. 382 (13 Pac. 55); *Bank of Colfax* v. *Richardson*, 34 Or. 518 (54 Pac. 359, 75 Am. St. Rep. 664); *Brown* v. *Whittington*, 39 Or. 300 (64 Pac. 649).

5. Under the rule thus announced, it remains to be seen whether or not Mrs. Harold made such a showing as to comply with the rules of law which imposed upon her the burden of proof. An examination of the testimony will show that she did not attempt particularly to describe when any of the money claimed to have been borrowed by her husband from her mother was received, except the $400. We believe, from a careful consideration of the testimony, that $400 was the only money ever borrowed by Harold from Mrs. Howard, which sum was included in the mortgage given to her, and, when she indorsed $800 on the note, she was secured to the extent of the loan. In reaching this conclusion, it is possible that a grave injustice may be done Mrs. Harold; but, if so, the blame must rest in part upon her, in not discharging the obligation resting upon her to prove the items constituting the alleged indebtedness to her mother, and also upon her husband for his contradictory statement in the petition and his testimony at the trial. A circumstance, however, that seems to support the conclusion we have reached, is found in the fact that, if Harold had been indebted to Mrs. Howard in the sum evidenced by the mortgage, it would have been as easy to establish the contention in the county court that $1,200 was donated by his mother-in-law to his wife for the conveyance as to prove that $400 was the considera-

tion therefor. The memorandum made on the note is another circumstance tending to show that Harold's statement in the petition is true, and that his testimony given at the trial is false; and it would seem reasonably to be inferred from such indorsement that his mother-in-law was a party to the scheme to hinder, delay, and defraud his creditors. Notwithstanding the intimate relation that should ever exist between the parties to a marriage contract, it is not to be assumed that a husband always discloses to his wife all his business transactions; but, in donating a sum of money to her daughter, a mother doubtless gives her full information regarding the matter, and hence Mrs. Harold must have known that, though the mortgage was given for $1,200, it was only intended to secure the payment of $400, which sum she probably received from her father's estate. The testimony of Mrs. Caldwell is only hearsay, and not to be considered, though it seems to corroborate Harold's statement that not more that $400 was loaned him by Mrs. Howard. This sum being due her, as the testimony tends to show, and secured by a mortgage on the premises, she had a right to donate the debt to Mrs. Harold, which constituted her separate estate, and amounted, in equity, to a transfer of the note, upon which there was due $400, carrying with it an assignment of the security. The lower court found the value of the land to have been $2,400, or $10 an acre, at the time the deed was executed to Mrs. Harold; and in this finding we concur, for the only evidence on that subject consists of the testimony of Follis and Shelton, and, if the value as stated by them had been greater than they estimated, it is probable that plaintiff's counsel would have introduced testimony tending to prove that fact. No doubt exists concerning the *bona fides* of the Caldwell and Keene mortgages of $800 and $600, respectively, and as Mrs. Harold only gave a further consideration of $400, making $1,800,

it is unnecessary to consider whether or not the difference between the value of the property and the sums so assumed and paid therefor was sufficient to impart to her notice of his fraudulent intent, for we rest our decision on the theory. that it is reasonably inferable from the testimony, and from the circumstances hereinbefore adverted to, that Mrs. Harold had actual knowledge of her husband's intent to cheat, wrong, and defraud his creditors.

The testimony shows that after the land was conveyed to Mrs. Harold she borrowed $1,000 from W. H. Hobson, giving him as security therefor a mortgage on the premises, and with the money so received she discharged the Keene mortgage, and had paid the interest on the Caldwell mortgage for $800 which had been assigned to Hobson. Notwithstanding we conclude that she had actual knowledge of, and was a party to, her husband's fraudulent intent, we believe she is entitled to the security assigned to her by her mother, on the assumption that a court of equity should not punish her by decreeing a recovery in excess of the value of the interest transferred : *Baldwin* v. *June*, 68 Hun, 284 (22 N. Y. Supp. 852); *Hamilton Nat. Bank* v. *Halsted*, 134 N. Y. 520 (31 N. E. 900, 30 Am. St. Rep. 693). True, Mrs. Harold, by executing a mortgage to Hobson, augmented the incumbrances on the land to the extent of $400 ; but plaintiff's counsel on September 18, 1893, knew the contents of her husband's petition to cancel Mrs. Howard's mortgage, but made no effort to set aside his deed until January 4, 1902, when this suit was instituted for that purpose. Such delay ought not to be rewarded, and hence Mrs. Harold will not be charged with the money so received from Hobson, on the assumption that she used it in improving the land, thereby enhancing its value.

6. The answer alleged that Mrs. Harold is a householder having a family of minor children, whose actual abode is

on a part of the land in question—particularly describing it—to which she is entitled as a homestead, and exempt from execution. The statute granting this immunity to judgment debtors was passed in 1893, but its provisions apply only to debts thereafter created: B. & C. Comp. § 221. It will be remembered that Harold's note was given to Kaiser prior to the passage of this act, and hence the defense insisted upon is unavailing.

The decree of the court below will therefore be reversed, and one entered here making plaintiff's judgment a lien upon the land in question, subordinate, however, to the liens of the Caldwell and Hobson mortgages, foreclosing the equitable lien of Mrs. Harold's mortgage, directing a sale of the premises, subject to the prior liens of the Caldwell and Hobson mortgages, and from the money arising from such sale there be paid, first, the costs and disbursements of this suit, and the expenses of such sale; second, the sum of $400 to Mrs. Harold, and interest thereon at 8 per cent from January 5, 1892; third, the amount of plaintiff's judgment, interest, attorney's fees, costs, and disbursements; and, fourth, the remainder, if any, to Mrs. Harold.                                      REVERSED.