Newell R. HAYS, Appellant,

v.

W. B. DARDEN, as Trustee in Bankruptcy of Tri-State Construction Co., a corporation, Bankrupt, Appellee.

No. 6337.

United States Court of Appeals
Tenth Circuit.

Nov. 9, 1960.

J. Benson Newell and LaFel E. Oman, Las Cruces, N. M., for appellant.

James T. Martin, Jr., and Glenn B. Neumeyer, Las Cruces, N. M. (Garland & Martin, Las Cruces, N. M., were with them on the brief), for appellee.

Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.

PHILLIPS, Circuit Judge.

Tri-State Construction Company,[1] a corporation, was adjudged a bankrupt on August 29, 1957. The instant action was commenced by Darden, as receiver in bankruptcy, against Hays, on December 19, 1957, in the United States District Court for the District of New Mexico. Thereafter, Darden became the trustee in bankruptcy of the bankrupt, and was substituted in that capacity as the party plaintiff.

In the complaint it was alleged that on or about October 22, 1956, and within one year prior to the filing of the petition in bankruptcy[2] Tri-State conveyed and transferred to Hays all of its assets with intent to hinder, delay and defraud its existing and future creditors. The relief sought was a judgment declaring the conveyance void and setting it aside, directing Hays to retransfer the property or its money equivalent to the trustee and account for the profits from the operation of the business of the bankrupt. The trial court awarded judgment against Hays and in favor of the trustee for $58,440.30. The judgment provided that any residue remaining in the bankrupt's estate after payment of all costs of administration and claims should be refunded to Hays. Hays has appealed.

Tri-State is a New Mexico corporation. Its officers are Mabelle Rothenberger, President, Luther L. Brake, Vice President, Eldon P. Rothenberger, Treasurer, and Louise Brake, Secretary. It was incorporated in July, 1955, and engaged in the business of lining ditches with concrete. The business was operated out of Las Cruces, New Mexico. On or about June 25, 1956, Hays took up with Tri-State the matter of doing certain work on a ditch located on property leased to Hays near Dell City, Texas. Eldon P. Rothenberger, representing Tri-State, informed Hays that he would like to do the work, but could not move Tri-State's equipment out of New Mexico until it had paid certain indebtedness. Thereupon, Hays loaned Tri-State $6,000 and took as security for the loan an assignment of substantially all of the equipment of Tri-State. Thereafter, on September 7, 1956, Tri-State executed a second assignment to Hays of substantially all of its equipment as security for a loan of $3,135.25 and for future advances to be made by Hays to Tri-State. Both loans are evidenced by promissory notes executed by Tri-State. On October 22, 1956, Tri-State executed and delivered to Hays a bill of sale covering practically all of its equipment. The bill of sale was

---

1. Hereinafter called the bankrupt or Tri-State.

2. The petition was filed August 12, 1957.

recorded in Hudspeth County, Texas. As part of the same transaction, Tri-State also assigned to Hays an account receivable from Donald E. Bennett on which the trial court found $13,945.75 had been earned by Tri-State on work done for Bennett by it prior to October 22, 1956.

■ The trial court found that prior to the transfer of October 22, 1956, Hays knew that Tri-State was heavily indebted and delinquent in payments on equipment; that in September, 1956, the officers and directors of Tri-State decided that all of the corporate assets should be moved to Texas to prevent attachment by Tri-State creditors and subsequently such assets were so moved; that two actions against Tri-State had been brought in a state court in New Mexico prior to the transfer and were pending at the time of the transfer; that from and after September 7, 1956, Hays paid all wages and material bills of Tri-State and all unpaid installments due on equipment that had been purchased by Tri-State; that the total amount advanced and obligations assumed and paid by Hays was $18,440.30 less than the reasonable value of the assets received by Hays; that subsequent to the transfer Hays continued the business of Tri-State under the assumed name of Tri-State Ditch Lining Company and filed a certificate for such assumed name in the State of Texas; that at the time of the transfer, Luther L. Brake and Eldon P. Rothenberger, former officers and directors of Tri-State, were employed by Hays in managerial positions with Tri-State Ditch Lining Company under an agreement to pay each of them a regular salary and 20 per cent of the profits; that the two assignments were recorded in New Mexico and the bill of sale was recorded in Texas; that Tri-State was never dissolved as a corporation and none of its unsecured creditors were given notice of the transfer to Hays; that the transfer to Hays rendered Tri-State insolvent; that the transfer was made within one year prior to the declaration in bankruptcy and that the physical assets transferred had passed into the hands of bona fide purchasers for value. The court concluded that the transfer to Hays was fraudulent and voidable under 11 U.S.C.A. § 107, sub. d(2). The evidence and the court's findings support that conclusion.

The court concluded that the trustee was entitled to recover from Hays $18,440.30, the difference between the reasonable value of the assets transferred to Hays and the amount that had been earned on the account receivable at the time of the transfer, and the amounts paid by Hays to or in behalf of Tri-State and the encumbrances assumed and paid by Hays. In arriving at the reasonable value of the assets the court used the book value (cost less depreciation), as of the last of September, 1956.

The court made three additional conclusions by which it gave the trustee the choice of recovering, in addition to the $18,440.30, the reasonable rental value of the equipment for the eight months it was used by Hays in the amount of $40,000; or in lieu of rental value of the equipment 20 per cent of the gross receipts from the operation of the business by Hays from October 22, 1956, or $24,507.17; or the net profits realized by Hays from the operation of the business in the sum of $3,000. The trustee elected to accept the reasonable rental value of $40,000 and the court awarded judgment for $58,440.30.

We think the findings of the trial court set forth above and its finding as to the reasonable value of the physical properties and the amount that had been earned on the account receivable at the time of the transfer are supported by substantial evidence and are not clearly erroneous.

■■ However, we think the court erred in arriving at the amount the trustee was entitled to recover. Since the property transferred to Hays had passed into the hands of a bona fide purchaser for value, the trustee was entitled to recover the reasonable value of such

property,[3] less any credits to which Hays was entitled as offsets. At the time the property was transferred to Hays it was subject to equipment liens for unpaid installments on equipment. Hays paid those installments and discharged the liens. If Hays had not discharged such liens, the trustee would have taken the property subject thereto. Indeed, the equity of Tri-State might have been lost by the foreclosure of the liens which Hays' payments avoided. We conclude, therefore, that Hays was entitled to off-set the amounts which he paid in discharge of equipment liens.[4]

The court should also award Hays a common claim for the other indebtedness owing to him by Tri-State and permit him to participate on the same basis with other general creditors in the distribution of the assets of the bankrupt.[5]

We think the court erred in awarding recovery for the use value of the property transferred to Hays on the basis of any of the three alternatives, a choice of which the court accorded the trustee. Clearly, when Hays is required to account for the value of the property transferred, including the account receivable as of the date of the transfer, less the amount of the liens discharged by him, he should not also be required to account for use value of property for which he has been required to pay full value.

Where a transfer has been set aside and the property has been returned by the transferee, then an award for use value and any deterioration of value caused by the transferee during the time the transferee had possession of the property would be proper.[6] But, counsel for the trustee have cited no authority and we have been unable to find any,

where the transferee is required to account for the value of the property transferred as of the date of the transfer and also account either for rent, profits, or other use value.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

3. Buffum v. Peter Barceloux Co., 289 U.S. 227, 235, 236, 53 S.Ct. 539, 77 L.Ed. 1140.

4. Hamilton National Bank of Boston v. Halstead, 134 N.Y. 520, 31 N.E. 900.

5. Buffum v. Peter Barceloux Co., 289 U.S. 227, 237, 53 S.Ct. 539, 77 L.Ed. 1140.

6. 60 A.L.R.2d 593.