THE HAMILTON NATIONAL BANK, of Boston, et al., Appellants, *v.* RICHARD H. HALSTED, Impleaded, etc., Respondent.

Where a transfer of personal property is set aside as fraudulent, as against the creditors of the transferrer, in an action brought by them, and it appears that prior to the transfer the property was pledged to secure a valid debt to a party in nowise connected with the fraud, and that the fraudulent transferee simply received the surplus of the avails of the sale of the property after deducting the amount of the debt, the creditors are not entitled to recover of him the full value of the property, but simply the value of the interest transferred, *i. e.*, the value of the property, deducting the amount of the debt.

However scandalous the fraud may be a court of equity has no power to award judgment for a sum exceeding that value, in order to punish the party for his wrongdoing.

Where it appears that the property was sold for less than its value the creditors are not limited to the price received, but may recover the value less the lien; the transferee having acquired title wrongfully, if he sold for less than the property was worth, the loss must fall upon him.

*Smith* v. *White* (27 N. Y. S. R. 227); *Wood* v. *Hunt* (38 Barb. 302); *Union Nat. Bank* v. *Warner* (12 Hun, 306); *Davis* v. *Leopold* (87 N. Y. 622); *Borland* v. *Walker* (7 Ala. 269), distinguished.

Reported below, 56 Hun, 530.

(Argued June 14, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 23, 1890, which modified and affirmed as modified, a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This was an action by a judgment creditor to set aside a general assignment for the benefit of creditors and the transfer of certain securities made by the firm, of which defendants were members, and for the appointment of a receiver.

The facts, so far as material, are stated in the opinion.

*George M. Pinney, Jr.*, for appellants.

*William Hildreth Field* for respondents.

Parker, J.    The judgment among other things adjudged that a transfer of certain securities made by William M. Halstead to Richard H. Halstead, on the 11th day of July, 1884, was fraudulent and void as against the creditors of William M. Halstead, individually, and the firm of Halstead, Haines & Co., of which William M. Halstead was a member.

Sometime prior to the date mentioned William M. Halstead, the owner of the securities, hypothecated them with the New York Life Insurance and Trust Company, to secure a loan made by it to Halstead of $65,000.

Halstead paid the amount thus received into the firm of Halstead, Haines & Co.

Subsequently the firm of Halstead, Haines & Co., and the individual members thereof, being about to make a general assignment for the benefit of creditors, William M. Halstead, without any actual consideration, transferred the securities so pledged, to his son Richard H. Halstead.    Upon the transfer, Richard H. gave to William M. his check for $65,000, which was indorsed by him and then returned to Richard H., who delivered the check together with an order to the trust company.    It canceled the loan, made delivery of the securities, and they were then rehypothecated with the same company for said sum of sixty-five thousand dollars.    No money was paid to either William M. or the trust company.    Richard H. having acquired the title to the stock, an arrangement was made which in effect operated to substitute Richard H. in the place of William M. as the debtor to the trust company.    This was accomplished by canceling the old loan and making a new one for the same amount, with a rehypothecation of the same securities.

As between William M. and Richard H. the effect of the transaction was to transfer the securities charged with the payment of the loan which it was originally pledged to secure.

He afterwards received from dividends and sales of the stock $76,500, leaving in his hands $11,500, after payment of the loan.    This sum, with interest, he was by the judgment

directed to pay to the plaintiffs, who were judgment creditors of William M. Halstead.

The appellant urges upon this appeal that judgment should have been rendered against him for the full amount of $76,500. That having been a party to a fraud a court of equity will charge him with the full value of the stock, notwithstanding the larger portion of it was required to pay a valid debt, which it had been pledged to secure prior to the transfer to a party in no wise connected with the fraud. It is said that this will be done by a court of equity by way of punishment for his participation in the fraud.

While it is true that cases abound where the courts in an action to set aside a deed or transfer of personal property on the ground of fraud, have refused to allow the fraudulent grantee or transferee to be reimbursed the money actually paid as a consideration for the conveyance or transfer, and in the course of discussion have treated the refusal of the court to allow any reimbursement whatever as a proper punishment for the fraud, it has never been assumed, so far as we have observed, that the refusal to allow reimbursement for moneys paid was based on the right of a court of equity to punish the party because of his wrongdoing. The effect of the decisions may have been to punish quite severely the fraudulent grantee or transferee, but the courts did not have the power to deprive him of one dollar because they deemed him deserving punishment.

If a fraudulent transferee sell the property before the commencement of the action to set aside the transfer, a judgment for the value of the interests transferred to him · may be recovered, but however scandalous the fraud may be the court is powerless to award judgment against him for a sum exceeding such value.

Other tribunals than courts of equity administer the law which has for its object the punishment of the guilty.

If A. convey to B. his farm worth five thousand dollars with intent to defraud his creditors, B. paying him one thousand dollars at the time of the delivery of the deed, the

court, in the decree setting aside the conveyance, will refuse to grant him relief, not as a proper punishment for the offense, but because the creditors have an equity equal to the value of the property granted, which should be fully protected as against him who fraudulently sought to despoil it. But for the conveyance the entire property would have been applicable to the payment of the creditors. By the fraud it was put beyond the reach of an execution. Because of it a court of equity declares the deed void. And to the request of B., that he be allowed the one thousand dollars paid to his fraudulent grantor, a court of equity refuses to listen because the equity of the creditors embraces the whole of the property, including necessarily the interest represented by the one thousand dollars paid to A., and it cannot be cut down or interfered with by any payment constituting a part of the fraudulent transaction. But for the misconduct of B. the creditors presumably could have reached the entire interest; therefore, the result of it must be borne by him and not by the innocent party.

Should A. convey his farm to B. subject to a valid pre-existing mortgage of five thousand dollars held by a third party, and B. subsequently dispose of it for a larger sum, out of the proceeds of which he pays the mortgage, he cannot be required to pay to the creditors the full value of the farm without deducting the amount due on the mortgage, for as to that sum the creditors have no equity. If the fraud had not been consummated, only the value of the property in excess of the mortgage could have been made available in payment of the claims of the creditors. As to that interest secured by the mortgage, no wrong was done them. Having no right to such interest, no principle of equity exists on which to found a claim for an appropriation of any benefit, on account of it, from a fraudulent grantee of the equity of redemption.

Or, if before B. sells the property, the conveyance is set aside on the ground of fraud, in an accounting for the rents and profits, he will be allowed for interest paid on the mortgage, and for the reason that the mortgage being valid, the

property was chargeable with the payment of the interest, as well as the principal, and the creditors were not, therefore, harmed by it. This question was carefully considered and passed on in *Loos* v. *Wilkinson* (113 N. Y. 485), the court saying: " Shall he account to the creditors for more rents than they could have received if they had had possession of the real estate ? * * * When the creditors of the grantor come into a court of equity seeking to compel him to account for rents and profits, the accounting must be on equitable principles ; and when he has been compelled to surrender the property conveyed to him, and to account for all the profits he has made, or could have made, or ought to have made, therefrom, the ends of justice have been completely and. exactly attained." In the same case, the fraudulent grantee was allowed for taxes paid, the court saying: " They were imposed by supreme authority for the benefit of the public, and were inevitable. If the creditors had taken the property at the time John Wilkinson took it, they would have been obliged to pay them. By the payment, he did them no wrong and caused them no prejudice. Why should he not be allowed them ? Upon what principle of equity, or upon what ground of reason, or public policy, or justice, can he be compelled to allow for the gross rents, without any deduction whatever for the taxes which he was obliged to pay."

The principle underlying the decision in *Loos* v. *Wilkinson* is exactly applicable and decisive here. As to the $65,000 paid out of the proceeds of the sale in extinguishment of a debt originally created by William H. Halstead, these plaintiffs were not harmed. If the transfer had never been made, and the securities had been obtained by them, they would have been subject to the payment of this valid pre-existing debt. It was created in good faith. The proceeds were turned over to the firm of Halstead, Haines & Co. And if appellant's contention could prevail, then the creditors would, in effect, recover the $65,000 twice ; once through the assets of the firm into which the sum borrowed originally went, and the second time from the fraudulent transferee. The latter

being obliged to pay for an interest which he did not receive, and to which the creditors would have never become entitled had the transfer not been made. In the language of Judge Earl, in *Loos* v. *Wilkinson*, this "would be spoliation, not justice or equity."

The authorities so carefully selected and skillfully presented by the counsel for the appellant, we do not regard as conflicting with the views so far expressed. In *Smith* v. *White* (27 N. Y. S. R. 227), a general assignment was declared fraudulent, and on the accounting the assignee, because of his being a party to the fraud vitiating the assignment, was not allowed moneys disbursed in the payment of preferences, as provided by the assignment.

In *Wood* v. *Hunt* (38 Barb. 302) the fraudulent grantee, subsequent to the conveyance to him, voluntarily paid the demands which certain creditors of the grantor had against him, and in the judgment declaring the deed fraudulent and void, reimbursement for such sums was refused him.

In *Union National Bank* v. *Warner* (12 Hun, 306) the fraudulent grantee had assumed the payment of certain debts which the grantor undertook to charge on the real estate by the instrument of conveyance, the deed was adjudged void and allowance for the obligations assumed denied.

In *Davis* v. *Leopold* (87 N. Y. 622) the fraudulent grantee assumed the payment of a pre-existing mortgage, and on review of the judgment setting aside the deed, this court said, "if it was true under the findings that Mrs. Leopold was entitled to protection for the sum paid or the liability assumed, it would, indeed, be necessary to state the amount. But she was a guilty participant in the fraud and not to be cared for." It does not appear, from the report of the case, however, that the grantee had paid the mortgage, or that it did not still continue to be a lien on the premises. The answer denied fraud and alleged a consideration. It averred that the conveyance was in payment and satisfaction of a debt due from the husband, and her agreement to pay certain mortgages and incumbrances upon the property.

Whatever she had agreed to pay for the property, whether in money or by way of assuming the payment of valid incumbrances, formed a part of the fraudulent transaction, and in an action to set aside the conveyance the court would leave the parties in the position in which they placed themselves. If the mortgage still continued in force, as we may assume it did, the judgment setting aside the conveyance did not affect its validity, nor the right of the mortgagee to enforce its collection out of the property. The assumption of its payment by the fraudulent grantee was a burden assumed in her own wrong, the consequences of which the court would not attempt to shield her from.

A very different question would have been presented had the plaintiffs demanded judgment, that she be decreed to pay the mortgage ; or had the property been previously sold, that judgment be awarded against her for the full value of the premises, and without deducting therefrom the amount secured by the mortgage.

In *Borland* v. *Walker* (7 Ala. 269) the grantee agreed to pay certain specified, but unsecured debts of the grantor, and to pay the balance of the purchase price in installments. The conveyance was set aside and the grantee refused indemnity for the sums expended.

It will be observed that in the cases cited, with the exception of *Davis* v. *Leopold,* to which we have sufficiently alluded, the question was whether a fraudulent grantee could be reimbursed for moneys paid, or agreed to be paid, as a part of the fraudulent transaction. To that question but one answer is ever given. The equity of the creditors extends to the full value of the debtor's interest in the property at the time of the fraudulent conveyance, and the fraudulent grantee cannot be allowed to cut down or interfere with the interest to which such equity attaches.

But quite a different question is presented where, as here, the creditors undertake to compel the fraudulent grantee or transferee to respond to them for an interest in property which he did not seek to get, and which his grantor or vendor did not have to convey or transfer to him.

In such a case the plaintiffs are without any equity on which to base a right of recovery.

The trial court found that on the day of the transfer the securities were worth five hundred dollars more than the defendant subsequently realized for them, but a recovery was only allowed for the sum received.

We think the judgment should have been for their value. The defendant wrongfully acquired title to the securities, and if he parted with them for less than they were worth the loss should fall on him.

The judgment should be modified accordingly, and, as modified, affirmed, with costs to the appellant.

All concur, except FOLLETT, Ch. J., dissenting, and LANDON, J., dissenting on the ground that the judgment appealed from does not provide for the recovery of the preferred indebtedness paid to the defendant.

Judgment accordingly.