ELIZABETH J. CAMPBELL, Appellant, *v.* GERTRUDE BROWN et al., Respondents.

Third Department, November 15, 1944.

*Orville R. Dunn,* attorney for appellant.

*Allen M. Light,* attorney for respondents Brown and Lindsay.

*F. Claude O'Connell,* attorney for respondent Morhous.

HEFFERNAN, J. This action was brought by plaintiff, a resident of Champlain, New York, to recover the sum of $5,400 damages for breach of a contract made by her with one Aaron Burr Torrance, and to obtain equitable relief against the codefendants.

Sometime after the commencement of the action Torrance died and Charles M. Morhous, the administrator of his estate, was substituted as a party defendant. The defendants, Gertrude Brown and Duncan M. Lindsay, both residents of Canada, were made defendants on the theory that they conspired with each other and with Torrance whereby the latter breached his contract with plaintiff.

The action was tried before a referee who awarded a judgment in plaintiff's favor against defendant administrator in the sum of $4,500 together with costs, dismissed the complaint

against defendant Lindsay "without prejudice and without costs" and dismissed the complaint against defendant Brown "upon the merits and without costs."

Plaintiff has appealed from that part of the judgment against the administrator which reduces the recovery from $5,400, the amount demanded in the complaint, to $4,500. She has likewise appealed from the portions of the judgment which dismiss the complaint against the codefendants.

The facts are undisputed. In the summer of 1937, Torrance, a widower, then eighty-seven years of age, entered into negotiations with plaintiff to induce her to accept him as a member of her household and to care for and maintain him for the remainder of his life.

On October 19, 1937, Arthur R. Atwood, an intimate friend of Torrance, at the latter's request and acting as his agent, wrote plaintiff a letter stating, in substance, that if she would provide a home and care for and maintain Torrance for the remainder of his life, Torrance would execute a will in her favor of all "his earthly possessions of every description, without restrictions or other provisions," with the exception of two legacies aggregating $400. To induce plaintiff to enter into such an arrangement Atwood represented to plaintiff that Torrance had an investment in Champlain Valley Building and Loan Association of $4,300 and was also the owner of his home in Plattsburgh of the value of $1,300.

Under date of October 25, 1937, in a letter to Atwood, plaintiff accepted the offer of Torrance and agreed that the contract should become effective in the summer of 1938.

On November 26, 1937, in pursuance of the agreement between the parties, Torrance executed a will, of which Atwood was the draftsman and in which he was named as executor, by the terms of which the testator devised and bequeathed all his property, with the exception of the two legacies heretofore mentioned, to plaintiff.

On August 17, 1938, Torrance took up his residence with plaintiff and became a member of her household and continued to reside there, where he was cared for and maintained by plaintiff, until September 14, 1942.

On January 19, 1942, Torrance sustained a paralytic shock and was bedridden from that day until his death on May 12, 1943.

Defendant Brown is the mother-in-law of defendant Lindsay and was a niece of Torrance's deceased wife. Neither defendant was related to Torrance. While Torrance was residing with

plaintiff defendant Brown visited him on but two occasions and Lindsay made five calls during the same period.

On September 14, 1942, defendant Lindsay physically removed Torrance from plaintiff's home, placed him in his automobile and drove him to the home of defendant Brown in Hemmingford, Quebec, where he remained until his death the following year. At the time of removing Torrance from plaintiff's home Lindsay gave plaintiff to understand that Torrance would return after a two weeks' visit with defendant Brown. When Torrance left plaintiff's home he had on deposit with the Loan Association $4,100 in cash and was the owner of real property of the value of $1,300, making his total assets $5,400.

On the day of his removal to the home of defendant Brown, Torrance, before a notary in Quebec, executed a will leaving his entire estate to defendant Lindsay and naming him executor thereof, thereby revoking the prior will in plaintiff's favor.

On the same day Lindsay induced Torrance to assign to him, Lindsay, the $4,100 deposit to the credit of Torrance in the Loan Association.

On the following day Lindsay withdrew from the Loan Association $900, and eight days later withdrew the balance of $3,200 and deposited the entire amount to his own credit in the Bank of Montreal.

On September 16, 1943, the will executed in Quebec by Torrance on September 14, 1942, was admitted to probate by the Surrogate of Clinton County and letters of administration were issued to defendant Morhous, defendant Lindsay having renounced his right to act as executor, obviously for the purpose of avoiding the service of process.

It is not disputed that plaintiff fully performed the contract on her part.

From the testimony of Atwood, a friend of Torrance for many years, it appears that Torrance had never mentioned the names of defendants Brown and Lindsay and had never referred to either of them. It also appears from his testimony, and is corroborated by the fact that Torrance had on deposit with the Loan Association a substantial sum of money, that Torrance was not indebted to anyone and had no outstanding obligations.

At the time Torrance left plaintiff's home he was her debtor. So long as she faithfully performed her contract he had an irrevocable obligation to leave her his property. Here we have a situation where plaintiff promised to care for Torrance during life; Torrance promised to reward her for that service. Plaintiff carried out her part of the agreement; Torrance broke

his agreement and thereby plaintiff was deprived of the promised reward.

It is not without significance that neither Brown nor Lindsay appeared at the trial. No evidence was given on their behalf. It may be, as urged by plaintiff's counsel, that defendant Brown conspired with Lindsay to induce Torrance to breach his contract with plaintiff. There is no evidence in this record to justify that conclusion. From the proof before us there is nothing to show that she profited in any way by the breach. As to her we think the judgment must be affirmed.

As to defendant Lindsay we have an entirely different picture. He transported Torrance, a senile old man, more than ninety-two years of age, into a foreign country and there, without any consideration, stripped him of all his property. The inferences which we may draw from the uncontroverted evidence clearly establish fraudulent conduct on his part. The rule is that a transfer without consideration by one who is then a debtor raises a presumption of fraud. The creditor may stand upon that presumption until it is repelled. It is not for him to do more. (*Ga Nun* v. *Palmer,* 216 N. Y. 603, 611.) It was the duty of Lindsay, if he acted innocently and in good faith, to come forward with an explanation and to show a legal consideration for the property he acquired. It was exclusively within the power of Lindsay to make a truthful disclosure of his relations with Torrance and his failure to do so warrants the conclusion that his conduct is tainted with fraud.

Courts of equity are not so incompetent or so powerless as to be unable to cope with the ingenuity of the cunning and the astute in devising new forms of wrong.

But, it is argued, by Lindsay's counsel, that plaintiff may not appeal because her complaint as to his client was dismissed " without prejudice ". That argument is not persuasive. What the referee meant by that statement is incomprehensible to us. This is not a case where plaintiff adopted the wrong remedy. She invoked the only remedy available to her. It would be a denial of justice to compel her to bring another action for the identical relief sought here. She has established a good cause of action against Lindsay and is entitled to judgment against him.

There remains only the question as to the amount of the recovery. The referee found that Torrance had an estate of $5,400 out of which should be deducted funeral expenses of $500 and bequests of $400, leaving a balance of $4,500. That is the amount of the judgment which he awarded against the administrator. In our opinion the referee was correct in this ruling.

The judgment against the administrator should be affirmed without costs; the judgment in favor of defendant Brown should be affirmed, without costs. The judgment of dismissal as to defendant Lindsay should be reversed on the law and facts and judgment should be rendered against him in the sum of $4,500, with interest and costs in this court and in the court below.

All concur.

The court annuls conclusion of law numbered V contained in the referee's decision.

The court makes the following additional findings of fact:

1. That on September 14, 1942, when Torrance's investment in Champlain Valley Federal Savings and Loan Association was made over and assigned to defendant Lindsay, he, Torrance, was not indebted to Lindsay.

2. That the aforesaid transfer and assignment was made for the purpose of concealing assets of said Aaron Burr. Torrance, and with the intent and purpose to hinder and delay and defraud plaintiff, and to deprive her of the fruits of her contract.

3. That the said assignment and transfer was executed to the defendant Lindsay without fair consideration, and was accepted by him with knowledge of the wrongful and fraudulent intent and purpose of said Torrance, and with like intent and purpose on the part of defendant Lindsay.

4. That defendant Lindsay counseled, advised and induced Torrance to leave plaintiff's home and to breach his contract with plaintiff with the fraudulent intent and purpose on the part of Lindsay to acquire for himself the assets and property of Torrance and to render Torrance insolvent so that plaintiff would be thereby deprived of the benefits of her contract.

5. That defendant Lindsay in acquiring for himself the property and assets of Torrance actually rendered Torrance insolvent.

6. That when defendant Lindsay removed Torrance from plaintiff's home and acquired his property Torrance was weak in body and mind, of which condition Lindsay was fully aware.

7. That while Torrance was in such weakened condition mentally and physically, defendant Lindsay, corruptly and fraudulently forced, persuaded and induced Torrance to breach his contract with plaintiff, of the terms of which Lindsay had knowledge and by such fraudulent and corrupt conduct acquired for himself the property and assets of Torrance to plaintiff's damage and in violation of Torrance's contract with her.

The court finds as conclusions of law:

1. That plaintiff is entitled to judgment against defendant Lindsay for the sum of $4,500 and interest, with costs in this court and the court below.

2. The judgment against defendant administrator is affirmed, without costs.

3. The judgment in favor of defendant Brown is affirmed, without costs.

Judgment is hereby directed accordingly.