MARINE MIDLAND BANK, Appellant, v NORMAN B. MURKOFF et al., Respondents.

Second Department, November 10, 1986

APPEARANCES OF COUNSEL

*McCabe & Mack (David L. Posner* of counsel), for appellant.

*Lloyd L. Rosenthal* for respondents.

**OPINION OF THE COURT**

LAZER, J.

In these two appeals the appellant is a judgment creditor who succeeded in setting aside the judgment debtor's conveyance of his interest in his jointly owned home to his wife. Dissatisfied with constructive fraud as the sole ground for the relief granted and having failed in a subsequent effort to expand the ground to include actual intent to defraud, the judgment creditor seeks the additional relief from us. It also argues that its remedies against the property and the wife of the judgment debtor should be broadened. We conclude that the plaintiff did establish its claim of an actual intent to defraud and thus is entitled to counsel fees, but the remainder of the relief it seeks is inappropriate.

## I

The action has its genesis in the financial troubles of Rocket Stores, Inc., in which the defendants, Norman and Abby Murkoff, who are husband and wife, and Richard Shafran, who is Abby's brother, held a controlling interest. During the period from 1974 to 1977, Norman Murkoff guaranteed three notes that Rocket Stores made to the plaintiff, but on July 7, 1977, Rocket Stores filed a petition in bankruptcy and subsequently defaulted on the notes. Within a few weeks, the plaintiff brought three separate actions against Norman Murkoff based on the guarantees and obtained three judgments totaling $78,921.97.

While these actions were pending, Norman Murkoff conveyed to Abby his interest in the home they owned as tenants by the entirety. The plaintiff then commenced this action to set aside the conveyance, alleging that it was fraudulent under Debtor and Creditor Law article 10. By the terms of Debtor and Creditor Law article 10, a conveyance is deemed fraudulent as to creditors not only where it is made with

actual intent "to hinder, delay or defraud" creditors (Debtor and Creditor Law § 276), but also where the fraud is constructive, i.e., the conveyance is made without fair consideration by a person (1) who is insolvent or will thereby be rendered insolvent (Debtor and Creditor Law § 273), or (2) against whom an action is pending or a judgment has been docketed for money damages (Debtor and Creditor Law § 273-a), or (3) who is engaged in a business for which his capital is unreasonably small (Debtor and Creditor Law § 274), or (4) who believes he will incur debts beyond his ability to pay (Debtor and Creditor Law § 275).

The complaint contained four causes of action, each alleging that the conveyance was fraudulent under a different section of the Debtor and Creditor Law. The primary defense was that the conveyance had been made in good faith because of Norman Murkoff's ill health and his long-standing promise to Abby's father to convey his interest to her once the mortgage had been satisfied.

The plaintiff obtained summary judgment on its cause of action under Debtor and Creditor Law § 273 (conveyance by a person who is or will thereby be rendered insolvent) and § 273-a (conveyance by a person against whom an action is pending), neither of which requires proof of an actual intent to defraud. A judgment was entered on March 28, 1984, directing the clerk to record the money judgments the plaintiff had previously obtained as liens against the real property of Abby Murkoff "to the extent of Norman B. Murkoff's prior interest therein". The two remaining causes of action were severed and a second judgment was ultimately entered on September 17, 1984, after trial, dismissing the plaintiff's claim under Debtor and Creditor Law § 274 (conveyance by person with unreasonably small capital) for failure of proof. The claim under Debtor and Creditor Law § 276 was dismissed on the ground that the plaintiff had not met its burden of proving actual intent to hinder, delay or defraud creditors. The appeal from the summary judgment is on the ground that the relief afforded was too narrow; the appeal from the judgment after trial relates solely to the cause of action based on actual fraud (Debtor and Creditor Law § 276).

The significance of these appeals to the plaintiff is twofold. To recover attorneys' fees under Debtor and Creditor Law § 276-a, actual intent to hinder, delay or defraud must be established (Debtor and Creditor Law § 276-a; *see, Farm Stores v School Feeding Corp.,* 102 AD2d 249, 256, 257, *affd* 64 NY2d

1065 *on opn at App Div; Schmitt v Morgan,* 98 AD2d 934, 936, *appeal dismissed* 62 NY2d 914; *Southern Indus. v Jeremias,* 66 AD2d 178, 185-186). Therefore, unless the plaintiff can obtain a judgment based on actual intent to defraud, attorneys' fees are unavailable. Even more important is the fact that while the plaintiff has been awarded a lien against Norman's interest in the entirety despite the conveyance to Abby, that interest remains subject to Abby's right of survivorship *(see, Hiles v Fisher,* 144 NY 306) and is thus of limited value. According to the plaintiff, where a tenancy by the entirety is involved, the creditor's relief should exceed mere maintenance of a lien even if nothing more than constructive fraud has been established, but certainly if actual intent to defraud has been proved against both spouses. The remedies the plaintiff seeks are (1) termination of the tenancy by the entirety and its transformation into a tenancy in common, (2) a money judgment against Abby Murkoff in the amount of the judgment against Norman, up to one half the value of the property, and (3) the imposition of a constructive trust on the interest Norman transferred, compelling Abby to hold that interest for the benefit of the plaintiff and pay to it one half of the rental income from the property.

## II

The burden of proof to establish actual fraud under Debtor and Creditor Law § 276 is upon the creditor who seeks to have the conveyance set aside *(Brody v Pecoraro,* 250 NY 56), and the standard for such proof is clear and convincing evidence *(Lowendahl v Baltimore & Ohio R. R. Co.,* 247 App Div 144, *affd* 272 NY 360, *rearg denied* 273 NY 584; *Cooper v Maurer,* 37 NYS2d 992; *see also,* 24 NY Jur, Fraudulent Conveyances, § 12, at 407).

■ Debtor and Creditor Law § 276 clearly distinguishes constructive fraud from actual intent to defraud, for it states: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Despite the statutory distinction, the plaintiff asserts that facts constituting proof sufficient to establish intent presumed in law, such as the mere conveyance of property at less than full consideration by a debtor in peril, establish as well a rebuttable presumption of actual intent to defraud. By this theory,

proof of constructive fraud constitutes clear and convincing evidence of intentional fraud sufficient to thrust upon the defendant the obligation to come forward with evidence that will defeat the plaintiff's case. Although our ultimate finding sustains the plaintiff's claim of actual intent to defraud, it is important for us to dispose of the presumption contention which continues to becloud debtor and creditor jurisprudence *(see, Scola v Morgan,* 66 AD2d 228; *Torr v Torr,* 18 AD2d 722; *Burch v Jeruss,* 281 App Div 991; *Campbell v Brown,* 268 App Div 324, *appeal dismissed* 294 NY 702; *Cody v Hovey,* 256 App Div 1038; *Sabatino v Cannizzaro,* 243 App Div 20; *Gates & Co. v B. N. Bldrs.,* 238 App Div 163). The authorities the plaintiff cites in support of the presumption theory *(see, Ga Nun v Palmer,* 216 NY 603; *Smith v Reid,* 134 NY 568) are no longer controlling under the scheme effectuated by the State's fraudulent conveyance act, and we therefore reject the notion that such a presumption of intentional fraud exists.

When the Uniform Fraudulent Conveyance Act was drafted, the rebuttable presumption of fraud concept had a widespread following in the States *(see, e.g., Miles v Monroe,* 96 Ark 531, 132 SW 643; *Kennard v Curran,* 239 Ill 122, 87 NE 913; *Flood v Bollmeier,* 165 Iowa 88, 144 NW 579; *Underleak v Scott,* 117 Minn 136, 134 NW 731; *Parker v Fenwick,* 147 NC 525, 61 SE 378). In drafting the Uniform Fraudulent Conveyance Act which later became New York's Debtor and Creditor Law article 10, the National Conference of Commissioners on Uniform State Laws sought to eliminate the confusion in existing laws which stemmed, in part, from judicial attempts to stretch the original English fraudulent conveyance statute, the Statute of Elizabeth (13 Eliz, ch 5) and its offspring *(see, e.g.,* New York's 1829 statute [2 Rev Stat of NY, part II, ch VII, tit III (1st ed)]), which permitted relief only on a showing of actual intent to defraud, to apply to situations where no such actual intent could be proven *(see,* Prefatory Note, Uniform Fraudulent Conveyance Act, 7A, ULA 427, 428).

To eliminate the undesirable reasoning underlying the judicially created presumptions while at the same time recognizing that a remedy was often required when the creditor was wronged without judicially proveable intent to defraud, the draftsmen of the uniform act eliminated the presumption as a basis for finding a conveyance fraudulent *(see,* Prefatory Note, *op. cit.,* 1918 Proceedings of 28th Ann Meeting of Natl Conf of Commrs on Uniform State Laws, at 353). Since the authors of the legislation were the National Commissioners on Uniform

State Laws and the legislation was enacted by New York's Legislature without change, the commissioners' notes are a clear indication of legislative intent *(see, Matter of Fisher v New York State Employees' Retirement Sys.,* 279 App Div 315, *affd* 304 NY 899) to displace and eradicate the State's common-law presumption of intent to defraud flowing from certain acts and to provide relief based on those acts on the rationale of constructive fraud. That being so, it is apparent to us that the presumption has ceased to exist.

## III

■ Having dispensed with the outmoded presumption, we must still decide whether on this record the plaintiff's evidence requires us to overturn the trial court's determination that intent to defraud had not been established by clear and convincing evidence. The elimination of the presumption does not mean that the facts which formerly gave rise to it are irrelevant to the claim of actual intent to defraud. To the contrary, fraudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act *(see, Stewart v Lyman,* 62 App Div 182, 186; *United Parcel Serv. v Norris Corp.,* 102 Misc 2d 231; *Matter of Gafco, Inc. v H.D.S. Mercantile Corp.,* 47 Misc 2d 661). The circumstances established by the evidence suffice to prove the defendants' actual intent to defraud.

The conveyance was made shortly after Rocket Stores had filed for bankruptcy and shortly after the plaintiff had commenced actions to enforce Norman's guarantee of Rocket's obligations. A transfer from husband to wife is ordinarily scrutinized carefully *(see, In re Rosenfield's Will,* 213 NYS2d 1009, *affd* 18 AD2d 718), but the familial relationship is not all that is involved here. In addition to being Norman's wife, Abby Murkoff was Rocket's part-time bookkeeper for some five years prior to the bankruptcy, and its full-time bookkeeper thereafter. The knowledge of Rocket's financial dealings obtained by Abby in the course of her duties necessarily belies the defendants' claim that she was unaware of Norman's personal guarantee of the corporate notes, and the timing of the conveyance in these circumstances is a clear indication of the defendants' joint purpose.

The conclusion that the defendants acted with intent to defraud is buttressed by their conduct after the conveyance.

While it may not be terribly significant that Norman and not Abby dealt with the tenants of the house which was the subject of Norman's conveyance, it is notable that the rent collected each month was deposited in a bank account in Norman's name, from which the expenses of the house were paid. Retention of control of the property after a conveyance is regarded as an indication that the conveyance was fraudulent (see, Scola v Morgan, 66 AD2d 228, supra; Southern Indus. v Jeremias, 66 AD2d 178, supra; Takacs v Kapela, 264 App Div 871; Bement v Dean, 246 App Div 670).

The defendants' explanation also adds to the strength of the plaintiff's case. The story that the conveyance was the result of Norman's 1959 promise to Abby's father to give his interest to her after the mortgage was paid and his subsequent concerns for his own health is beyond belief. Although the mortgage had apparently been satisfied in March of 1977, the conveyance was not made until some 5½ months later, when Norman was a defendant in three actions seeking substantial damages. Such fortuitous timing makes it difficult to accept the contention that the conveyance was intended to carry out an alleged promise to Abby's father. With respect to Norman's illness, the credibility defect is even sharper. The alleged motive for the transfer, to ensure Abby's succession to the property upon Norman's death, amounts to no motive at all, since such succession is an inherent aspect of Abby's interest as a tenant by the entirety. Moreover, Norman had been working full time since his 1975 illness. Since the transfer was not made while he was actually sick, the conveyance two years later and after he had recovered does not support the proffered explanation.

The circumstances surrounding the conveyance establish clearly and convincingly the defendants' "actual intent * * * to hinder, delay, or defraud" plaintiff. The Supreme Court, Dutchess County, thus erred in dismissing Marine Midland's fourth cause of action after trial and judgment pursuant to Debtor and Creditor Law § 276 should be granted on that cause of action and the matter remitted for an assessment of attorneys' fees pursuant to Debtor and Creditor Law § 276-a.

## IV

We turn then to the matter of other remedies. Contending that the judgment permitting a levy on Norman's interest and the Debtor and Creditor Law's other remedies are inadequate

(see, Debtor and Creditor Law § 278), the plaintiff seeks termination of the original tenancy by the entirety and its transformation into a tenancy in common, a declaration that Abby holds the property as a constructive trustee, entitling plaintiff to the rents and profits which have accrued since the conveyance, and a money judgment against Abby Murkoff.

In support of its claim that the tenancy by the entirety should be terminated, the plaintiff first contends that what has been granted—the right to levy upon the interest of one tenant by the entirety—is a dubious entitlement at best and equity should grant a more effective remedy. Second, with Abby Murkoff's participation in the fraud proved, equity should intervene to prevent her from profiting from her own wrongdoing by retaining the property free of the plaintiff's interest if she outlives her husband. Neither contention is persuasive.

Even before the Legislature's adoption of the Uniform Fraudulent Conveyance Act, it was established that the relief to which a defrauded creditor was entitled in an action to set aside a fraudulent conveyance was limited to that which could have been obtained had there been no conveyance (Hamilton Natl. Bank v Halsted, 134 NY 520). Hamilton Natl. Bank involved the fraudulent transfer of certain shares of stock, which had subsequently been sold by the assignee, himself a participant in the fraud. Prior to the fraudulent conveyance the shares had been encumbered by a valid lien which preexisted any interest on the part of the creditor and which was subsequently satisfied upon the sale by the assignee. The issue was whether the defrauded creditor was entitled to judgment for the full value of the shares or for their value as encumbered. The Court of Appeals rejected the creditor's argument that the assignee should be punished for his fraud, reasoning that the creditor's equitable interest—the only basis upon which it could follow the shares into the assignee's hands—extended only to property which was available prior to the conveyance to satisfy its claim. Such a rule is consistent with the act, the remedy provisions of which allow the creditor only to reach the property as if there had been no conveyance (Debtor and Creditor Law § 278), or, if its claim has not yet been established, to protect the property for its benefit (Debtor and Creditor Law § 279).

Terminating the tenancy by the entirety would clearly violate the rule in Hamilton Natl. Bank (supra). Like the securities there, Norman's interest in the property prior to

the conveyance was "encumbered" by Abby's right of survivorship, and had plaintiff attempted to satisfy its judgment against Norman by levy at that time, his interest would have been sold subject to Abby's right *(see, Hiles v Fisher,* 144 NY 306, *supra; First Fed. Sav. & Loan Assn. v Lewis,* 14 AD2d 150, 154). Transforming the tenancy by the entirety into a tenancy in common obviously would extinguish the right of survivorship *(see, Stelz v Shreck,* 128 NY 263; *Hohenrath v Wallach,* 37 AD2d 248, *appeal dismissed* 30 NY2d 674), giving the plaintiff the ability to assert its judgment against an undivided one-half interest in the property.

Although *Hamilton Natl. Bank (supra)* is old, we see no indication in modern jurisprudence that a creditor's rights should be expanded by the fashioning of punitive remedies not previously available. To begin with, the remedies explicitly provided in the fraudulent conveyance act *(see,* Debtor and Creditor Law §§ 278, 279) go no further than *Hamilton Natl. Bank* permits and have not been enlarged in the more than 60 years since the statute was enacted. Further, the recent trend in the Legislature has been to expand the rights not of creditors, but of debtors, by regulating the terms and manner of entry into contracts *(see,* General Obligations Law § 5-702 [plain language] [originally enacted by L 1977, ch 747 as § 5-701 (b), (c), renum by L 1978, ch 199 as § 5-702]) and collection practices *(see,* CPLR 5222 [d], [e] [notice of service of restraining notice on third party] [added by L 1982, ch 882]; General Business Law art 29-H [prohibition of unfair debt collection practices] [added by L 1973, ch 753]; CPLR 305, 503 [f]; 513 [venue and notice rules for consumer credit actions] [as amended by L 1973, ch 238]; CPLR art 62 [requirements for provisional remedy of attachment] [added by L 1962, ch 308]), and by expanding the list of property exempt from execution *(see,* CPLR 5206 [a] [4] [added by L 1980, ch 717]; CPLR 5205 [h] [added by L 1980, ch 116]; CPLR 5205 [g] [added by L 1978, ch 17]; CPLR 5205 [a] [5] [amended by L 1976, ch 697]) and dischargeable in bankruptcy (Debtor and Creditor Law art 10-A [added by L 1982, ch 540]). Indeed, the only recent legislation significantly expanding the rights of creditors has been addressed to the special problem of enforcing matrimonial judgments (CPLR 5241, 5242 [added by L 1985, ch 809]).

Punishment is not a proper basis for granting relief in a fraudulent conveyance action. No matter how "scandalous" the conduct, punishment is a matter for other tribunals *(Hamilton Natl. Bank v Halsted,* 134 NY 520, 522, *supra)* and,

indeed, certain fraudulent conveyances come within the purview of the Penal Law *(see,* Penal Law art 185). In a more modern context, the Court of Appeals has held that punitive damages are not properly awarded in a fraudulent conveyance action, reasoning that the act of removing property from the reach of a creditor is not misconduct so " 'gross and wanton' " as to justify such an award *(see, James v Powell,* 19 NY2d 249, 260; *see also, Borkowski v Borkowski,* 39 NY2d 982; *but see, Keen v Keen,* 113 AD2d 964, *lv dismissed* 67 NY2d 646). This is consistent with the uniform act, the purpose of which is "to enable a creditor to obtain his due despite efforts on the part of a debtor to elude payment" *(Hearn 45th St. Corp. v Jano,* 283 NY 139, 142). The remedies it provides *(see,* Debtor and Creditor Law §§ 278, 279) are clearly geared toward reestablishing the status quo *ante,* rather than punishing the debtor. Depriving Abby of her survivorship interest is plainly punitive and it is not a permissible remedy.

*Clarkson Co. v Shaheen* (533 F Supp 905), on which the plaintiff relies, disregarded this nonpunitive principle. In *Clarkson,* the survivorship interest of the debtor's wife in tenancy by the entirety property was terminated in order to prevent her from benefiting by her participation in the fraud. *Clarkson* reached its legal conclusion as to New York law on the basis of *Van Alstyne v Tuffy* (103 Misc 455), which held that the heirs of a man who murdered his wife and then committed suicide could not inherit the property the victim and murderer held as tenants by the entirety. *Van Alstyne* is simply another in the long line of cases which preclude a murderer or his heirs from succeeding to the property of the victim *(see, Riggs v Palmer,* 115 NY 506; *Bierbrauer v Moran,* 244 App Div 87; *Matter of Sengillo,* 206 Misc 751; *Matter of Sparks,* 172 Misc 642; *Matter of Santourian,* 125 Misc 668). The *Van Alstyne* principle is that "where the natural and direct consequence of a criminal act is to vest property in the criminal, whether he be a thief or a murderer, the thought of his being allowed to enjoy it is too abhorrent for the courts of this state, or of the United States, to countenance * * * [a]nd equity will restrain in such case though contract, testament or statute be thereby nullified" *(Van Alstyne v Tuffy, supra,* at p 459). That principle, however, is inapplicable to the law of fraudulent conveyances.

We also reject the plaintiff's claims to a money judgment against Abby Murkoff. A money judgment against the grantee is sometimes an available form of relief *(see, Brown v Kimmel,*

68 AD2d 896; *see also, Halsey v Winant,* 233 App Div 103, *revd on other grounds* 258 NY 512), but because the defrauded creditor is not entitled to an enhancement of position beyond what it was before the fraud, such a judgment may be granted only where the grantee has disposed of the wrongfully conveyed property or depreciated it *(Wasey v Holbrook,* 141 App Div 336, *affd* 206 NY 708; *Mallouk v American Exch. Natl. Bank,* 157 App Div 711, *affd* 216 NY 670) or has tortiously interfered with it *(James v Powell,* 25 AD2d 1, *appeal dismissed* 17 NY2d 812). Since the judgment appealed from gives the plaintiff the same rights it had prior to the conveyance, the lien of the judgment against Norman Murkoff remains as valid and enforceable as it was before the conveyance. A money judgment against Abby has no basis in statute or in case law.

Nor is the plaintiff entitled to the imposition of a constructive trust for its benefit on the property which was fraudulently conveyed. Apart from the fact that such a remedy has no explicit mention in the Debtor and Creditor Law, the cases that have employed the term "constructive trustee" in connection with a fraudulent conveyance *(see, Julien J. Studley, Inc. v Lefrak,* 48 NY2d 954, 956; *Matter of Lack v Kreiner,* 91 AD2d 813, 814; *Laco X-Ray Sys. v Fingerhut,* 88 AD2d 425, 431, *appeal dismissed* 58 NY2d 606) have described transferees where the transfer was in derogation of the duty corporate directors and officers owe to creditors deriving from the principle that the corporate assets constitute a trust fund for the benefit of creditors *(see, Julien J. Studley, Inc. v Lefrak,* 66 AD2d 213, *affd* 48 NY2d 954, 956, *supra,* "essentially for reasons stated in the opinion of the Appellate Division"). Reliance on these authorities therefore is inappropriate outside the corporate context. Moreover, even in those cases, constructive trusts were not employed as remedies.

The creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance; the limited remedies explicitly permitted under the statute confirm this interpretation. The imposition of a constructive trust upon the transferee would provide the plaintiff with an equitable interest in the property which could not have been achieved solely by entering the judgment, even in the absence of a conveyance. Norman's interest in the property may be reached by levy despite the fact that it stands in Abby's name and the plaintiff may also resort to remedies

provided by the CPLR for the collection of judgments *(see,* CPLR art 52). Current public policy provides no basis for the creation of new common-law remedies against evasive debtors.

Accordingly, the judgment entered upon the plaintiff's summary judgment motion should be affirmed insofar as appealed from, but the judgment dismissing the cause of action based on intentional fraud should be reversed insofar as appealed from and the matter remitted to the Supreme Court, Dutchess County, for an assessment of attorneys' fees.

MOLLEN, P. J., WEINSTEIN and RUBIN, JJ., concur.

Ordered that the judgment of the Supreme Court, Dutchess County, entered March 28, 1984, is affirmed insofar as appealed from; and it is further,

Ordered that the judgment of the same court, entered September 17, 1984, is reversed insofar as appealed from, on the law and the facts, the plaintiff is awarded judgment on its fourth cause of action, and the matter is remitted to the Supreme Court, Dutchess County, for an assessment of attorneys' fees; and it is further,

Ordered that the plaintiff is awarded one bill of costs.