This proceeding involves a determination of priorities in a foreclosure action. A judgment of strict foreclosure was entered by agreement of all the parties, and title vested in the plaintiff, The Lincoln Savings Bank, FSB (Lincoln), of Jericho, New York. The plaintiff then sold the premises in question and after payment of the first and second mortgages the balance is being held in escrow pending the entry of a supplemental judgment.
By way of background, Ernest and Thea Sittenfeld borrowed $250,000 from Lincoln and executed a first mortgage on their home on Bailiwick Woods Circle in Greenwich in favor of Lincoln. A second mortgage to East West Financial Corporation of Rhode Island, which was subsequently assigned to Bay Loan and Investment Bank, in the approximate amount of $107,000 also appeared of record. The premises were subsequently sold by Lincoln for $625,000 to a Murray and Janice Baxter, and both the first and second mortgages were paid off. The balance, after subtracting about $24,000 for real estate commission and other closing costs, amounting to approximately $207,000, is being held in escrow because of disputes among the subsequent lienors. CT Page 2395
These lienors are; (i) Joseph J. Cuneo of Hastings-on Hudson, New York whose mortgage from the Sittenfelds for $250,000 was recorded in the Greenwich Land Records on January 3, 1989; (ii) American Investment Bank, N.A. (A.I.B.) of Salt Lake City, whose judgment lien against Ernest Sittenfeld and his brother Curtis was recorded on March 2, 1989 in the approximate amount of $130,000; (iii) Union Chelsea National Bank, National Westminster Bank, U.S.A., and Marine Midland Bank, N.A. (referred to collectively as the Marine group), all of which recorded prejudgment attachments on the Sittenfeld property on May 15 1989 for approximately $645,000, $500,000 and $410,000 respectively, arising out of loans to Mr. Sittenfeld's corporation, I.R.A.S. Development Corp. (IRAS), which was guaranteed by Ernest and Thea Sittenfeld.
The issue in determining priorities is the validity of a $250,000 promissory note dated June 21, 1988 from Ernest and Thea Sittenfeld and payable to Joseph Cuneo and the mortgage deed to Cuneo securing this note, which is dated December 16, 1988. A.I.B. and the Marine group claim that the note and mortgage are fraudulent and void.
If the mortgage to Cuneo which, of course, was recorded prior in time to the other encumbrances, is held to be void, A.I.B. seeks $65,000 as representing one-half of its $130,000 judgment lien against both Ernest and Curtis Sittenfeld. The $65,000 is deemed to constitute Ernest Sittenfeld's one-half share of the Bailiwick Road property.
Subtracting $65,000 from the escrow account would leave a balance of $142,000 which would be turned over to the Marine group when their attachments are converted to judgment liens, except that the Marine group claims that the A.I.B. judgment lien is void and therefore that the three banks are entitled to the full amount in escrow.
Actually, title to the property was in Thea's name alone at the time of foreclosure because Ernest has quit-claimed his one-half share to his wife on October 19, 1988. It seems clear that this purported transfer was without consideration and voidable. The property had originally been conveyed in 1984 to both Ernest and Thea. Ernest then quitclaimed his interest to his wife in 1986. Thereafter, Thea reconveyed Ernest's interest back to him so that they could obtain the second mortgage from East West Financial Corporation in April 1988. Ernest then reconveyed his one-half interest back to Thea in October 1988 without the deed reciting any consideration. Moreover, Mr. CT Page 2396 Sittenfeld acknowledged that his motive in placing the property in his wife's name alone was to insulate it from his creditors, but that it was always understood that he and his wife each owner one-half of the home.
A.I.B. and the Marine group claim that the mortgage to Cuneo was granted without consideration, and at a time when the Sittenfelds were insolvent, and/or with the intent on the part of both the Sittenfelds and Cuneo to defraud and prevent them from collecting their just debts from the Sittenfelds. Cuneo contends that the mortgage from Mr. and Mrs. Sittenfeld was based on fair consideration arising out of an antecedent or preexisting debt owed him by Ernest Sittenfeld. The Marine group argues that since title was in Thea's name, A.I.B.'s judgment which was recovered against Ernest and his brother Curtis was wrongfully liened against the premises in question which were in Thea's name alone.
This case was tried to the court on: (i) an agreed stipulation of facts; (ii) the deposition of Ernest Sittenfeld taken on February 22, 1990; (iii) the deposition of Joseph Cuneo taken on March 2, 1990; and (iv) the live testimony of Joseph Cuneo, both examination and cross-examination.
These sources disclose a rather complicated series of financial transactions involving Ernest Sittenfeld, his brother Curtis, A.I.B., the united States Trust Company (UST), and IRAS, a corporation owned and controlled by both Ernest and Curtis Sittenfeld.
The first transaction was in the spring of 1986. Ernest Sittenfeld needed money in connection with one of his business ventures and he persuaded his long-time and very close friend Cuneo to furnish a letter of credit which in turn enabled IRAS to borrow money. The money was repaid, the letter of credit was related, and Cuneo was paid a fee for furnishing this document.
The second transaction occurred in May of 1987. Again Ernest Sittenfeld needed money for IRAS for another business venture, and A.I.B., which was Sittenfeld's bank, loaned $500,000, which was secured by a letter of credit issued by Cuneo's bank, UST, on May 15 1987 with A.I.B. as beneficiary. This loan, however, was made in the name of Curtis J. Sittenfeld, as evidently A.I.B. wished to make the loan to Curtis because the bank had a prior business relationship with him, although it was understood that the funds were to be used by IRAS to purchase certain raw materials. This loan went into default and A.I.B. drew down CT Page 2397 on the letter of credit issued by UST. In order to cover its letter of credit UST then made a loan to Cuneo of $500,000 secured by Cuneo's investment portfolio held by UST. At this point in time A.I.B. had by virtue of the letter of credit recovered the money it had loaned Curtis Sittenfeld and UST had paid out $500,000 but reworked this into a loan to Cuneo secured by Cuneo's securities. In effect, Cuneo owed UST $500,000, the amount A.I.B. had loaned to Curtis Sittenfeld, and Ernest personally guaranteed to Cuneo that he would indemnify him against any loss incurred as a result of the letter of credit being drawn down.
In November 1987 UST issued a third letter of credit at the request of Ernest Sittenfeld in the amount of $500,000 with A.I.B. as the beneficiary, which then loaned this amount to Ernest and Curtis Sittenfeld, although the funds were actually turned over to Cuneo as reimbursement for the May 1987 letter of credit. The result was that in effect Cuneo was repaid for the May 1987 transaction but still owed UST $500,000 as of November 1987 for the third letter of credit.
In June 1988 the Sittenfelds defaulted on the latest loan, A.I.B. drew down on the November 1987 letter of credit, and again UST paid A.I.B. and loaned $500,000 to Cuneo, once again secured by his stock portfolio. At this point Cuneo owes UST $500,000 and at a meeting at UST Ernest Sittenfeld signed a guarantee of Cuneo's debt to UST, and he also promised Cuneo that he would provide Cuneo with a note for $250,000 and a mortgage on his home in Greenwich as security for the UST loan. It is this note and mortgage which are at issue in this particular proceeding. In June 1988, Ernest gave UST a financial statement showing a net worth of approximately $2,000,000 and liabilities of $1,500,000, although there is considerable evidence that Ernest and Thea were insolvent both in June and later in December of 1988.
Although Ernest and Thea did sign a note in favor of Cuneo in June of 1988 for $250,000, they did not execute a mortgage as promised. The note itself says that "It is the intention of the parties hereto to secure this note by a Mortgage Deed on the property located at 16 Bailiwick Circle, Greenwich. . ." Cuneo they began a suit in this court against Ernest and Then Sittenfeld as she also had signed the $250,000 note, and sought an attachment of the Greenwich property. In this suit Cuneo also alleged that Ernest' s quitclaiming of his one-half interest to Thea was a fraudulent conveyance. Although title was only in Thea's name, both Mr. and Mrs. Sittenfeld signed the mortgage deed CT Page 2398 in favor of Cuneo for $250,000, which was dated December 29 1988, and was recorded, as stated previously, on January 3, 1989.
Cuneo argues that at the time of the execution of this note and mortgage Ernest Sittenfeld owes him a large sum of money, and that this constituted a pre-existing indebtedness, which in turn constitutes adequate consideration for the note and mortgage, relying on Doty v. Wheeler, 120 Conn. 672, 678, 182 A. 468 (1936);
 The principle is well established that a bona fide transfer of property for an adequate and valuable consideration, even though the grantor be in failing circumstances or insolvent at the time, may be good as to creditors, nor will it be invalidated because the consideration in whole or in part was a past indebtedness.
This same principle was restated in Tyers v. Coma,214 Conn. 8, 12, 570 A.2d 186 (1990). The wife had put $115,000 of her money into a joint bank account with her husband. Mr. Coma withdrew the money for his own business purposes, and signed a promissory note in favor of the plaintiff. This note went into default in November 1987, and in May of 1988 the husband quitclaimed his one-half interest in the marital home to Mrs. Coma. The trial court found that the conveyance to Mrs. Coma was made to satisfy an antecedent debt, i.e., Mr. Coma's promise to repay his wife for the withdrawal of her money from the bank account. The trial court was entitled. . .to accept the testimony of both defendants that a loan agreement existed between them that obligated Mr. Coma to repay the entire $115,000 amount owed to his wife. The trial court was further entitled to accept the testimony of both defendants that the transfer of Mr. Coma's equity in the marital premises was in partial satisfaction of his obligation to his wife."
The other defendants argue that the mortgage was fraudulently granted to Cuneo, and that there was no valid consideration for this conveyance.
The note from the Sittenfelds to Cuneo was executed in New York, although the mortgage deed conveyed property located in Connecticut. I have not attempted to determine whether this issue of a fraudulent conveyance must be decided under our law or New York law, viz., New York Debtor and Creditor Law 273, 274 and 276. It appears that there CT Page 2399 are no discernible differences between New York law and our own Connecticut fraudulent conveyance law embodied in General Statutes 52-552, which provides that "[a]ll fraudulent conveyances. . .made. . .with intent to avoid any debt. . .belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against these persons. . .to whom such debt. . . belongs." New York's Debtor and Creditor Law 272 states that "fair consideration" is given when [a] in exchange for such property "as a fair equivalent therefor and in good faith, property is conveyed or an antecedent debt is satisfied," or alternatively, [b] when such property "is received in good faith to secure a[n]. . .antecedent debt in amount not disproportionately small as compared with the value of the property. . . ."
Our Connecticut statute concerning fraudulent transactions was most recently analyzed in Tyers v. Coma, supra, 11:
 The party seeking to set aside a conveyance as fraudulent bears the burden of proving either; (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . .The party seeking to set aside the conveyance need not satisfy both alternatives.
Tyers also held that fraudulent intent must be proved by "clear precise and unequivocal evidence". Id., 11. See also Gaudio v. Gaudio, 23 Conn. App. 287, 313, 580 A.2d 1212
(1990), which refers to these two types of fraud as "constructive" and "actual", respectively. The law is the same in New York. Marine Midland Bank v. Murkiff, 508 N.Y.S.2d 17,20, 120 A.2d 122 (2d Dept. 1986), app. dism.69 N.Y.2d 875, 507 N.E.2d 322. ("The burden of proof to establish actual fraud under Debtor and Creditor Law 276 is upon the creditor who seeks to have the conveyance set aside. . .and the standard for such proof is clear and convincing evidence.")
It seems evident that at the time the Sittenfelds executed a note and mortgage in favor of Cuneo, Ernest owed money to Cuneo, and it follows that the consideration at least on Ernest's part was a pre-existing or antecedent debt. This is not a case where the Sittenfelds mortgaged CT Page 2400 their home to their close friend Cuneo simply in order to circumvent their obligations and debts to other creditors such as A.I.B. and the Marine group. Rather, Cuneo does in fact owe money to UST and obtaining a mortgage of the Sittenfeld home was aimed at securing this debt, at least to some extent.
I do not believe, in other words, that A.I.B. and the Marine group have sustained their burden of proving that the Sittenfelds and Cuneo were guilty of fraud. Cuneo was indebted to UST because he had accommodated Sittenfeld's desire to borrow money for certain business ventures. When Sittenfeld was unable to pay the loans, UST in effect put a lien on Cuneo's investment portfolio, so the bottom line is that Sittenfeld owes Cuneo a lot of money, and Cuneo attempted to get his money back by obtaining a mortgage of Sittenfeld's Greenwich property. I get the sense not of a fraudulent transaction but rather of Cuneo attempting to salvage his losses as best he could.
The other element of the statute refers to the necessity of consideration to support a conveyance such as a mortgage. As pointed out in Tyers v. Coma, supra, 12: "As the party attempting to prove the lack of consideration, the plaintiff bore the burden of proof." Ernest Sittenfeld signed the note and mortgage because he owed Cuneo a great deal of money and Cuneo was pressuring him for the mortgage and in fact commenced a suit when the mortgage was not executed a promised. This mortgage was, as I view the evidence, a recognition that Ernest owed Cuneo a substantial amount of money, which constitutes a pre-existing debt that suffices for fair consideration for the mortgage. Again it is noted that Cuneo is not obliged to prove the existence of consideration, but rather the other defendants have the burden of proving the lack of such consideration, a burden which I do not believe they have sustained as to the mortgage deed signed by Ernest Sittenfeld.
The other defendants also argue that the May 1987 letter of credit was issued in the name of Curtis Sittenfeld and used by IRAS for a business venture and therefore that Ernest actually never owed any money to Cuneo.
I disagree with this contention because the latest letter of credit issued in November 1987 secured a loan from A.I.B. to both Ernest and Curtis. Although the letter of credit in effect was a rollover from the earlier letters of credit, and while the funds were used by a company, the letter of credit was furnished by Cuneo at the request of Ernest and the money was used by a company owned, controlled CT Page 2401 and operated solely by Ernest and Curtis. Moreover, Ernest signed a guarantee with UST that he would repay the money that UST had in effect paid out on the letter of credit on Cuneo's behalf. Since UST was fully protected by its lien on Cuneo's security, it is Cuneo who was the real beneficiary of this guarantee. Cuneo was actually owed $500,000, which is why he solicited and obtained a second $250,000 note, this time signed by Ernest and Curtis, rather than by Ernest and his wife.
Although it appears that Ernest and Thea were insolvent when they executed the note and mortgage and in effect gave a preference to Cuneo over their other creditors, so long as there is fair consideration, and I find there to have been such, it follows that the note and mortgage do not violate General Statutes 52-552. Doty v. Wheeler, supra, 678.
Regarding the validity of the A.I.B. liens the Marine group claims that because title to the Greenwich residence was solely in Thea's name, and since she did not owe anything to A.I.B., because its judgment was against Ernest and Curtis, it follows that the A.I.B. judgment lien is void. The facts, however, indicate that in June 1988 when the note was executed, title to their marital home was in the names of both Ernest and Thea. Even though he later quitclaimed his interest back to his wife before the mortgage was executed, I believe that the A.I.B. lien is valid as to Ernest's one-half share in the home.
This same reasoning would, I believe, apply also to the Cuneo note and mortgage, namely, that it is valid only as to Ernest's one-half share of the premises. When Thea signed the note and executed the mortgage she did not owe Cuneo anything, no antecedent debt was in existence, she was insolvent, she knew her husband had unsatisfied debts, and it follows that there was a lack of fair consideration as to the quitclaim deed from Sittenfeld to his wife.
In conclusion, a supplemental judgment hereby enters that Cuneo is entitled to $125,000 from the escrow account; that A.I.B. is entitled to $65,000; and that the balance belongs to the Marine group. Interest has been earned on the escrow account and should be paid to the above encumbrancers in proportion to their respective recoveries.
So Ordered.
Dated at Stamford, Connecticut this 6 day of March 1991.
WILLIAM B. LEWIS, JUDGE. CT Page 2402